v.

STATE of Indiana, Appellee–Petitioner.

No. 49A04–0308–JV–383.

Court of Appeals of Indiana.

May 5, 2004.

Katherine A. Cornelius, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Joby Jerrells, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

BARNES, Judge.

### Case Summary

K.S. appeals the juvenile court's order committing him to the custody of the Department of Correction ("DOC") after find-

ing him in violation of probation. We reverse.

## Issue

The sole restated issue we address is whether the juvenile court properly obtained jurisdiction in this matter.

## Facts

On May 2, 2002, K.S., who was thirteen at the time, was arrested on suspicion of having committed Class A misdemeanor battery. On May 3, 2002, the State filed a petition alleging K.S. to be a delinquent child; a preliminary inquiry and investigation report was also completed on that date by the probation department. The juvenile court also conducted an initial hearing on that date, during which it advised K.S. and his mother of their rights, stated "that it has jurisdiction over this matter" after ascertaining K.S.'s age, and provided K.S. and his mother with a copy of the delinquency petition. App. p. 35.

After K.S. admitted to the battery charge on May 10, 2002, the juvenile court adjudicated him to be delinquent and placed him on probation. The probation department filed several allegations that K.S. violated his probation during 2002 and 2003. On December 4, 2002, the juvenile court ordered a suspended commitment to the DOC for K.S. On April 23, 2003, after another finding of a probation violation, the juvenile court continued K.S.'s suspended commitment to the DOC and additionally placed him on intensive probation. On May 10, 2003, K.S. was arrested on suspicion of battering his sister, K.J. K.S. denied the allegation, but the juvenile court found the allegation to be true after hearing testimony from K.J. and K.S.'s mother. As a result of this violation of probation, on June 18, 2003, the juvenile court granted wardship of K.S. to the DOC for a recommended period of six months. K.S. now appeals.

## Analysis

■ K.S.'s argument is that the juvenile court never properly obtained jurisdiction during the entirety of these proceedings because it failed to strictly follow the statutory prerequisites for obtaining jurisdiction at the time of the original delinquency filing in May 2002. Indiana courts have held for many years that strict compliance with the statutory prerequisites for obtaining jurisdiction at the commencement of delinquency proceedings is required of juvenile courts. *See, e.g., Shupe v. Bell,* 127 Ind.App. 292, 300–01, 141 N.E.2d 351, 355 (1957) (holding juvenile court, under statutes then in effect, could not acquire jurisdiction in delinquency proceeding in the absence of a delinquency petition filed by the probation officer *"under an order of the court authorizing the same"*) (emphasis added).

The statutes governing the initiation of delinquency proceedings have evolved over the years. Additionally, cases interpreting and applying the statutes have listed the statutory prerequisites to jurisdiction in various ways. One constant requirement, however, has been that the juvenile court must authorize the filing of a delinquency petition.[1] *See Taylor v. State,* 438 N.E.2d 275, 277 (Ind.1982) (concluding that a determination by the juvenile court that it

---

1. *Collins v. State,* 540 N.E.2d 85, 86 (Ind.Ct. App.1989), contains the most recent delineation of the statutory prerequisites for a juvenile court's acquisition of jurisdiction in a delinquency action: (1) the prosecutor's request that a preliminary investigation report be prepared; (2) the preparation of such a report; (3) the filing of a delinquency petition; (4) the juvenile court's decision whether to approve the filing; and (5) the issuance of a summons to the child and his or her parents or guardian. Currently, the statutes where these requirements are found are Indiana Code Sections 31–37–8–1, 31–37–8–5, 31–37–8–6 and 31–37–10–1, 31–37–10–2, and 31–37–12–2, respectively.

will assume jurisdiction and the filing of a formal petition of delinquency, pursuant to the court's authorization, are necessary prerequisites to the acquisition of jurisdiction) (citing *Duty v. State,* 169 Ind.App. 621, 349 N.E.2d 729 (1976)); *Shupe,* 127 Ind.App. at 300–01, 141 N.E.2d at 355; *Seay v. State,* 167 Ind.App. 22, 37, 337 N.E.2d 489, 498 (1975) (holding that the order of the juvenile court authorizing the filing of a delinquency petition is one of the "essential documents" needed when considering a challenge to juvenile jurisdiction); *Collins v. State,* 540 N.E.2d 85, 86 (Ind.Ct.App.1989) (noting that juvenile court's approval of delinquency petition filing is one of the statutory requirements to obtaining jurisdiction). Noncompliance with the statutory prerequisites precludes the assumption of jurisdiction over a juvenile. *Taylor,* 438 N.E.2d at 277. Currently, the statutory requirement that juvenile courts authorize the filing of a delinquency petition is found at Indiana Code Section 31–37–10–2, which provides:

> The juvenile court shall do the following:
> (1) Consider the preliminary inquiry and the evidence of probable cause.
> (2) Approve the filing of a petition if there is probable cause to believe that:
> (A) the child is a delinquent child; and
> (B) it is in the best interests of the child or the public that the petition be filed.

Juvenile delinquency proceedings are different from adult criminal proceedings in many respects. One crucial difference relevant to this case is that in adult criminal proceedings, the decision whether to file and prosecute charges against a defendant rests exclusively with the State, through the filing of an information or indictment by a prosecuting attorney. *See* Ind.Code § 35–34–1–1. A trial court has no independent power to refuse the filing of an information or indictment. Where juveniles are concerned, however, Indiana Code Section 31–37–10–2 expressly provides that the State does not make the final decision whether to proceed with a juvenile delinquency action. Instead, juvenile courts are vested with the responsibility of reviewing a proposed delinquency petition and an accompanying preliminary investigation form, and making an *independent* decision whether there is probable cause that (1) the juvenile is delinquent *and* (2) it is in the best interests of the child or the public to commence a delinquency proceeding. Pursuant to the clear language of the statute, probable cause of the juvenile having committed a criminal act is not enough by itself to require an official juvenile delinquency proceeding; particularly in cases involving less heinous crimes, it may not always be in the best interests of the child or the public to submit the child to the full authority of the judicial system.[2]

There is no indication in the record that the juvenile court made an independent determination in this case of the necessity of proceeding with a delinquency action. Instead, all that can be gleaned from the record is that the State's delinquency petition was treated like an information or indictment in an adult criminal proceeding, that is, the mere filing of the petition was viewed as sufficient to commence the delinquency proceeding. The chronological case summary reveals that K.S. was arrested and placed in detention on May 2, 2002. The prosecutor filed a delinquency

---

**2.** It may be beneficial to the public as well as the child not to commence a full-blown delinquency proceeding instead of an informal proceeding in less serious matters, in terms of cost and the burden on court dockets, local juvenile facilities, probation departments, service providers, and the DOC.

petition on May 3, 2002, and the probation officer also filed a preliminary investigation report on that date. The juvenile court also conducted an initial hearing on that date and issued a post-hearing written order. In it, the court notes the filing of the petition and preliminary investigation report. It notes K.S.'s date of birth and then states that it has jurisdiction over the action.[3] It notes the advisement of rights given to K.S. and his mother, the decision to release K.S. from custody, and the decision to exclude the public from any proceedings in the case. However, there is nothing in the initial hearing order or elsewhere in the record demonstrating that the juvenile court assessed whether there was probable cause that (1) K.S. was delinquent or (2) it was in K.S.'s or the public's best interests to allow the State to initiate a delinquency proceeding.

The State does not argue that the juvenile court's approval of the filing of a delinquency petition is not a statutory jurisdictional requirement. Instead, it argues that *Taylor* should control the outcome of this case. In that case, the juvenile court's order book originally failed to reflect that all of the procedural prerequisites for juvenile jurisdiction had been followed. However, the juvenile court later made a nunc pro tunc amendment to the docket clarifying that all of the steps had, indeed, been followed. Under these circumstances, and because the juvenile did not argue that any of the prerequisites had not, in fact, been discharged or discharged inadequately, our supreme court concluded that "the omissions in the order book, which apparently were the product of clerical oversight, cannot be characterized as reversible error." 438 N.E.2d at 277.

We conclude *Taylor* is not on point. First, *Taylor* concerned a situation in which the juvenile court concededly had followed all of the statutory prerequisites to jurisdiction, and had simply failed to officially record them at the time. Here, by contrast, there is no concession by K.S. and no evidence in the record that the juvenile court made an independent determination that it would approve the filing of the delinquency petition on the grounds provided for in Indiana Code Section 31–37–10–2. Second, the *Taylor* court stated, "The purposes of the procedural requirements had been satisfied; the interests of the public and the juvenile had been evaluated and considered." *Id.* In K.S.'s case, there is nothing in the record to indicate that the interests of K.S. and the public were considered and evaluated by the juvenile court as required by Section 31–37–10–2. To the extent the State notes that K.S. and his mother were informed of their rights and the allegations against K.S. at the initial hearing, and that a preliminary investigation report was filed, such requirements are separate from the requirement that a juvenile court independently approve a delinquency petition filing.[4] We conclude that the outcome in *Taylor* is not controlling here and that the juvenile court did not properly obtain jurisdiction in this

---

**3.** The child being under eighteen years of age is one of the elements of a juvenile court's subject-matter jurisdiction. *See* I.C. §§ 31–30–1–1 and 31–37–1–1.

**4.** The State also points out that the word "Approved" appears in parentheses in the CCS next to the entry for the May 3, 2002, initial hearing; it seems to contend that this indicates the juvenile court's approval of the filing of the delinquency petition. However, we note that the word "Approved" followed by a date appears in parentheses throughout the CCS anytime the juvenile court entered an order of some kind where a magistrate issued a recommended order and the presiding judge approved it. It is clear to us that this notation simply indicates the presiding judge's approval of the magistrate's recommended orders on those dates.

matter because of the absence of any indication of the juvenile court's approval of the delinquency petition filing, as required by longstanding case law and Indiana Code Section 31–37–10–2.[5]

We further observe that in the "Juvenile Justice Benchbook—Delinquency" produced by the Indiana Judicial Center, the Benchbook Committee states that it believes there are five essential elements to obtaining jurisdiction in a juvenile delinquency proceeding. They are: (1) preparation of written intake information; (2) the prosecutor's request for a preliminary inquiry; (3) the written preliminary inquiry report; (4) the delinquency petition; *and* (5) the order of the juvenile court approving the filing of the delinquency petition. *See* Indiana Judicial Center, Juvenile Justice Benchbook—Delinquency D–2.00 p. 4 (6th ed.2002). The Benchbook also contains a sample order for approving the filing of a delinquency petition. *See id.* at D–5.00 p. 5. Nevertheless, this crucial step for obtaining juvenile jurisdiction apparently was not taken in this case.

■ There might be a possible reason for confusion arising out of the Benchbook. Immediately after it lists the five "essential elements" for obtaining juvenile jurisdiction, it states in brackets: "**NOTE:** This referral procedure may be altered by agreement of the prosecutor and the court. I.C. 31–37–8–1 through 6; I.C. 31–37–10–1 through 8." *Id.* at D–2.00 p. 4. The language of this "note," we suggest, is much too broad. Specifically, Indiana Code Section 31–37–8–5 provides:

(a) The intake officer shall do the following:

(1) Send the prosecuting attorney a copy of the preliminary inquiry if the case involves an allegation that the child committed an act that would be a crime if committed by an adult.

(2) Send to:

(A) the prosecuting attorney; or

(B) the attorney for the county office of family and children;

a copy of the preliminary inquiry if the case involves an allegation that the child committed a delinquent act that would not be a crime if committed by an adult.

(3) Recommend whether to:

(A) file a petition;

(B) informally adjust the case;

(C) refer the child to another agency; or

(D) dismiss the case.

(b) *The prosecuting attorney and the court may agree to alter the procedure described in subsection (a).*

---

5. In *Howard v. State,* 175 Ind.App. 575, 578, 372 N.E.2d 1237, 1240 (1978), a panel of this court concluded that the juvenile court's failure to expressly authorize the filing of a delinquency petition did not deprive the juvenile court of jurisdiction. We decline to reach the same result in this case for two primary reasons. First, the opinion states that "[the juvenile] considers [this element] a precondition to the acceptance of jurisdiction by the juvenile court." *Id.* at 576, 372 N.E.2d at 1239. This language suggests the panel did not fully accept the juvenile's contention; however, as we have noted, the contention is absolutely correct, as reaffirmed by our supreme court in *Taylor* four years after *Howard* was decided. Second, it appears that the juvenile had previously been before the juvenile court, as the opinion mentions the juvenile's "prior juvenile records" being presented to the juvenile court before he was waived to adult court. *Id.* at 575, 372 N.E.2d at 1238. This court has held that once a juvenile court obtains jurisdiction in one delinquency proceeding, it need not strictly follow all of the statutory jurisdictional prerequisites in a subsequent delinquency proceeding against the same child. *See S.W.E. v. State,* 563 N.E.2d 1318, 1321 (Ind.Ct.App.1990). K.S. had not previously been the subject of a delinquency proceeding before May 3, 2002.

(Emphasis added). By the plain language of the statute, the prosecutor and court may agree to alter the manner in which the preliminary inquiry is distributed and/or the recommendations it may contain, but that is all they may agree to alter. No other provision in the juvenile code allows for the prosecutor and court to alter the procedures for obtaining juvenile jurisdiction. With particular relevance to this case, there is no provision that allows a juvenile court to surrender its responsibility of independently assessing whether a delinquency petition should be filed as required by Indiana Code Section 31–37–10–2. The only procedure that may be altered is that contained in Indiana Code Section 31–37–8–5, not Sections 31–37–8–1 through 6 and 31–37–10–1 through 8, in their entirety, as the Benchbook suggests.[6]

We observe that K.S. apparently did not challenge the juvenile court's jurisdiction in this matter until the present appeal, which raises the question of waiver.[7] Ordinarily, the answer to this question would derive from an analysis of precisely what type of jurisdiction is impacted by a juvenile court's failure to properly follow the statutory and case law prerequisites, including explicit approval for filing a delinquency petition. There are three types of jurisdiction: subject-matter jurisdiction, jurisdiction over the parties, and jurisdiction over the particular case. See Buckalew v. Buckalew, 754 N.E.2d 896, 898 (Ind.2001). Jurisdiction over the subject-matter and over the parties is required for a court to enter a valid judgment. See id. Defects in jurisdiction over a particular case are incident to the exercise of jurisdiction, not its existence, and such defects render a judgment merely voidable, not void, and must be subject to specific and timely objection. See id.

Although many cases have discussed the importance of courts following the proper steps for obtaining jurisdiction in juvenile matters, there is not a clear answer as to what type of jurisdiction those steps implicate. For example, in Harris v. State, 398 N.E.2d 1346, 1347–48 (Ind.Ct.App.1980), a panel of this court addressed the problem of a juvenile court's failure to follow the proper procedural steps for invoking jurisdiction as one going to jurisdiction over the particular case, which was subject to waiver for failing to timely object. Judge Staton dissented, stating "that the failure of a trial court to comply with statutory prerequisites for the assumption of jurisdiction is an error not susceptible to waiver on appeal." Id. at 1348–49 (Staton, J., dissenting).

Our review of cases covering the last half-century reveals that the majority opinion in Harris is the only one that has considered a juvenile court's failure to follow the procedural steps for obtaining jurisdiction to be a waivable error, and that Judge Staton's dissent represents the prevailing view. The most important case contradicting Harris on this point is Summers v. State, 248 Ind. 551, 230 N.E.2d 320 (1967), which Judge Staton relied upon in his dissent in Harris. In Summers, our

---

**6.** The author of this opinion is aware that, particularly in juvenile courts that have a high volume of delinquency petitions sought, the review by the court of a proposed petition is sometimes, by necessity, rather cursory. The author is also cognizant that prosecutors and courts have, in many instances, arrived at a tacit understanding that the majority of petitions that are filed will be approved. Whatever the arrangement, however, Indiana Code

Section 31–37–10–2 requires a finding by the court that the two criteria we have discussed are met. This is not a mere "technicality," but a statutory mandate and condition precedent to jurisdiction that has been recognized in case law for many years.

**7.** The State does not argue waiver but we feel compelled to address it nonetheless.

supreme court, whose decisions we are bound to follow, stated "the exclusive original jurisdiction" of a juvenile court may only be obtained by following the statutory prerequisites, including court authorization for the filing of a delinquency petition, "and unless such preliminary statutory procedural steps are taken there is no jurisdiction established." *Id.* at 556–57, 230 N.E.2d at 323. Additionally, the *Summers* court addressed the jurisdictional question in that case sua sponte, without the issue ever being raised on appeal or otherwise: "in cases where the interests, rights and privileges of juveniles are involved, the rule is stated that this Court is permitted to search the record for a determination of issues inherently revealed by the record." *Id.* at 554, 230 N.E.2d at 322. *See also Seay v. State*, 167 Ind.App. 22, 28, 337 N.E.2d 489, 493 (1975) (stating that we would address juvenile jurisdiction questions, even if not raised by the appellant).

Perhaps the most extreme example demonstrating the non-waivability of a juvenile court's errors regarding the statutory prerequisites to jurisdiction is *Kindred v. State*, 493 N.E.2d 467 (Ind.Ct.App.1986). In that case, a seventeen-year-old was accused of committing theft in 1965. He was waived into adult court and found guilty of the charge. The defendant did not challenge this conviction until he filed a petition for post-conviction relief in 1984. We reversed the denial of post-conviction relief and thus the 1965 conviction, concluding that the juvenile court had never obtained jurisdiction "over the subject matter and person of Kindred, the juvenile" because there was no "strict statutory compliance" with the jurisdictional prerequisites. *Id.* at 470. We held that the "subsequent adult criminal proceedings on the theft count were therefore null and void." *Id.* at 471.

We are persuaded by the weight of authority that regardless of the label attached to the type of "jurisdiction" impacted by a juvenile court's failure to follow the necessary prerequisites for proceeding with a juvenile delinquency action, it has long been recognized by our supreme court and this court that errors of this type are not waivable and may be raised at any time, with or without a contemporaneous objection. Therefore, because of the absence of any record of the juvenile court's adhering to the clear statutory and case law requirement of independently approving the initiation of delinquency proceedings, we are compelled to conclude that it lacked jurisdiction not only to enter the original order adjudicating K.S. to be delinquent, but also to find he violated his probation stemming from that adjudication and to commit him to the custody of the DOC. The fact that K.S. did not contemporaneously object to the initiation of the delinquency proceedings does not change this result.

### Conclusion

The juvenile court failed to obtain jurisdiction in this matter because the record fails to disclose that it independently approved the filing of the original delinquency petition after considering probable cause of delinquency and the best interests of the child and the public. We must reverse and vacate the original delinquency adjudication as well as all of the orders flowing from it, including K.S.'s commitment to the DOC for violating his probation.

Reversed.

KIRSCH, C.J., and FRIEDLANDER, J., concur.