815 N.E.2d 210 (2004)
M.B., Appellant-Respondent,
v.
STATE of Indiana, Appellee-Petitioner.
No. 49A02-0401-JV-94.
Court of Appeals of Indiana.
September 28, 2004.
*211 Elizabeth Gamboa, Franklin, IN, Attorney for Appellant.
Steve Carter, Attorney General of Indiana, Joby Jerrells, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

OPINION
FRIEDLANDER, Judge.
Fifteen-year-old M.B. appeals a true finding that he committed an act that would constitute the offense of Battery,[1] a class A misdemeanor, if committed by an adult. M.B. presents the following restated issues for review:
1. Did the juvenile court lack jurisdiction by virtue of its failure to enter a separate order, pursuant to Ind.Code Ann. § 31-37-10-2 (West, PREMISE through 2003 1st Regular Sess.), finding probable cause to believe M.B. had committed a delinquent act and that it was in the best interests of the child or society to file the petition?

*212 2. Did the juvenile court err in placing M.B. with the Department of Correction?
We affirm.
The facts favorable to the judgment are that on November 3, 2003, fifteen-year-old A.H. picked up his paycheck from a McDonald's restaurant and began walking home. M.B. and several of his friends drove past A.H., and came so close to him that their car brushed against the coat A.H. was carrying. A.H. turned around and made an obscene gesture at the passing car. M.B. pulled the car over in front of a fire station, got out of the car and, along with at least one of his passengers, confronted A.H. M.B.'s compatriot punched A.H. in the back of the head, after which M.B. and the other assailant pushed A.H. to the ground and got on top of him. Fireman Matthew Bennett was sitting nearby and witnessed the entire attack. Bennett positively identified M.B. as one of the assailants.
On November 3, 2003, the State filed a delinquency petition alleging that M.B. had committed an act that would constitute the offense of battery if committed by an adult. M.B. was arrested that same day. The initial hearing was conducted on November 5, 2003. At that hearing, the court entered the following:
A handwritten information having been filed alleging the child to be a delinquent child, and the Intake Officer's written report of the Preliminary Inquiry, the advisement of rights to child, and the advisement of rights to parents are now filed and made part of the record.
The Court having received statements from the respondent regarding his age and date of birth, and same having been confirmed by Candy Brooks (Mother  Legal Custody) who was present, the Court finds that it has jurisdiction over this matter and that such finding will remain throughout the pendency of this action, unless and until further evidence is presented to the court. The Court therefore finds that it has jurisdiction over this matter.
Appellant's Appendix at 27. Following the initial hearing, the court ordered that M.B. should be detained. A fact-finding hearing was conducted on December 3, 2003, after which the court found M.B. to be a delinquent child. M.B. was remanded to the Marion County Juvenile Detention Facility pending a dispositional hearing. Such a hearing was conducted on January 5, 2004, and M.B. was made a ward of the Indiana Department of Correction for housing in a correctional facility for children, for a recommended period of twelve months.

1.
M.B. contends the juvenile court lacked jurisdiction because it failed to enter a separate order, consistent with I.C. § 31-37-10-2, which states:
The juvenile court shall do the following:
(1) Consider the preliminary inquiry and the evidence of probable cause.
(2) Approve the filing of a petition if there is probable cause to believe that:
(A) the child is a delinquent child; and
(B) it is in the best interests of the child or the public that the petition be filed.
M.B. contends that I.C. § 31-37-10-2 requires an affirmative finding, on the record, that there is probable cause to believe that the child subject to a delinquency proceeding is a delinquent child, and that it is in the best interests of the child or public that the petition be filed. M.B. contends that this is a jurisdictional prerequisite and that failure to comply with the statute results in a failure on the trial court's part to invoke jurisdiction over the case.
*213 Juvenile courts are courts of limited jurisdiction. Their jurisdiction must be invoked by establishing the statutory jurisdictional prerequisites. Phares v. State, 796 N.E.2d 305 (Ind.Ct.App.2003). When jurisdictional facts are not in dispute, we apply a de novo standard of the review on the question of whether a lower court had jurisdiction over a juvenile proceeding. Id.
A recent decision by this court would seem to support M.B.'s argument on the question of jurisdiction. In K.S. v. State, 807 N.E.2d 769 (Ind.Ct.App.2004),[2] this court was confronted with precisely the same issue, concerning the same statute, i.e., I.C. § 31-37-10-2. There, as here, the juvenile appellant did not present a jurisdictional challenge until his appeal to this court. We noted in K.S. that of the three elements of jurisdiction  subject matter jurisdiction, personal jurisdiction, and jurisdiction over the case  subject matter jurisdiction alone is not waivable. We stopped short of characterizing the type of jurisdiction implicated in K.S.'s (and now M.B.'s) argument as subject matter jurisdiction. Nevertheless, we held that the jurisdiction at issue was not waivable, explaining that conclusion as follows:
We are persuaded by the weight of authority that regardless of the label attached to the type of "jurisdiction" impacted by a juvenile court's failure to follow the necessary prerequisites for proceeding with a juvenile delinquency action, it has long been recognized by our supreme court and this court that errors of this type are not waivable and may be raised at any time, with or without a contemporaneous objection. Therefore, because of the absence of any record of the juvenile court's adhering to the clear statutory and case law requirement of independently approving the initiation of delinquency proceedings, we are compelled to conclude that it lacked jurisdiction not only to enter the original order adjudicating K.S. to be delinquent, but also to find he violated his probation stemming from that adjudication and to commit him to the custody of the DOC. The fact that K.S. did not contemporaneously object to the initiation of the delinquency proceedings does not change this result.
K.S. v. State, 807 N.E.2d at 775. With respect to the views of this court in general and the author of this opinion in particular, this would seem at first blush to settle the question M.B. presents. We note, however, that the State filed a Petition for Rehearing in K.S., arguing extensively that our conclusions with respect to the non-waivability of jurisdiction in that case were faulty. The author of this opinion voted to grant that petition, based upon the views set out in the remainder of this opinion. Therefore, we do not adhere to the holding in K.S. v. State.
We begin with a threshold question, viz., what element of jurisdiction is implicated by I.C. § 31-37-10-2? There are three elements of jurisdiction that must be present in order to confer upon a court the power to preside over a case: jurisdiction over the subject matter, jurisdiction over the parties, and jurisdiction over the particular case. Buckalew v. Buckalew, 754 N.E.2d 896 (Ind.2001). For our purposes, the primary difference among those three is that challenges to subject matter jurisdiction are not waivable, see, e.g., Georgos v. Jackson, 790 N.E.2d 448 (Ind.2003), while the other two elements are. See, e.g., Stidham v. Whelchel, *214 698 N.E.2d 1152, 1155 (Ind.1998) ("lack of personal jurisdiction may of course be waived"); Kondamuri v. Kondamuri, 799 N.E.2d 1153, 1158-59 (Ind.Ct.App.2003) ("the lack of jurisdiction over the particular case must be raised at the earliest opportunity possible or the objection is waived"), trans. denied.
The question of subject matter jurisdiction entails a determination of whether a court has jurisdiction over the general class of actions to which a particular case belongs. Troxel v. Troxel, 737 N.E.2d 745 (Ind.2000). In the instant case, the question is whether the general scope of authority vested in the Marion Superior Court, Juvenile Division (Marion Juvenile Court) includes the authority to hear and determine juvenile delinquency cases. See Buckalew v. Buckalew, 754 N.E.2d at 898 (a dissolution case in which the inquiry into the court's subject matter jurisdiction was whether the court had "the general scope of authority to hear and determine dissolution cases"). Ind.Code Ann. § 31-30-1-1 (West, PREMISE through 2003 1st Regular Sess.) provides, "A juvenile court has exclusive original jurisdiction ... in the following: (1) Proceedings in which a child ... is alleged to be a delinquent child under IC 31-37." M.B. was alleged to be a delinquent child in a delinquency proceeding initiated under I.C. § 31-37. Therefore, Marion Juvenile Court has jurisdiction over the subject matter of M.B.'s case.
We turn now to the question of personal jurisdiction. Our courts have held that a juvenile court obtains personal jurisdiction over a juvenile in a delinquency proceeding when the juvenile submits to the authority of the court by appearing at scheduled proceedings, and does so throughout the course of the proceedings without ever challenging the trial court's personal jurisdiction. See C.T.S. v. State, 781 N.E.2d 1193 (Ind.Ct.App.2003), trans. denied. A challenge to personal jurisdiction would be brought in the form of a motion to dismiss. Id. In the instant case, M.B. did not challenge the court's in personam jurisdiction at the trial court level by submitting a motion to dismiss. Instead, M.B. and his mother appeared at every hearing, never challenged personal jurisdiction, and fully submitted themselves to the authority of the juvenile court. Under these facts and circumstances, the trial court had personal jurisdiction. See id.
"Once a court has acquired subject matter and personal jurisdiction, challenges to its subsequent rulings and judgment are questions incident to the exercise of jurisdiction rather than to the existence of jurisdiction." Buckalew v. Buckalew, 754 N.E.2d at 898. Challenges focusing on the exercise of jurisdiction, rather than its existence, implicate the final element of jurisdiction we will consider, i.e., jurisdiction over the particular case. See id."[I]f a tribunal possesses the power to determine cases of the general class to which the particular case belongs, it possesses subject matter jurisdiction to consider the particular case, absent specific and timely objections to the jurisdiction of such particular case." Board of Trustees of New Haven v. Fort Wayne, 268 Ind. 415, 375 N.E.2d 1112, 1117 (1978). To be "timely" in this context would require, at the very least, registering an objection to the court's jurisdiction before the initiation of an appeal. Cf. id. (objections to facts conferring jurisdiction over a particular case must be made before responding to the petition containing the complaint against the respondent). By delaying the challenge to Marion Juvenile Court's jurisdiction over his particular case until the appeal of the underlying dispositional order, M.B. waived the issue.
*215 In summary, the Marion Juvenile Court had subject matter jurisdiction over M.B.'s case, and M.B. waived any challenge to the other two jurisdictional elements, i.e., personal jurisdiction and jurisdiction over the particular case. Therefore, the judgment is not vulnerable to challenge on jurisdictional grounds.

2.
M.B. contends the trial court erred in placing him with the Department of Correction. According to M.B., "The order of the juvenile court making M.B. a ward of the Department of Corrections for placement in a correctional facility does not comply with the purpose and policy of the Juvenile Code." Brief of Appellant M.B. at 9.
After a juvenile has been adjudicated delinquent, choosing a specific disposition is a matter committed to the juvenile court's discretion, subject only to the statutory considerations of the welfare of the child, the safety of the community, and the Juvenile Code's policy of favoring the least harsh disposition. L.L. v. State, 774 N.E.2d 554 (Ind.Ct.App.2002), trans. denied; see also Ind.Code Ann. § 31-34-19-6 (West, PREMISE through 2003 1st Regular Sess.). We will overturn a dispositional order only if we determine the court "abused its discretion because its conclusion and judgment are clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." Id. at 556. M.B. contends the dispositional order contravenes the foregoing principles because there were less restrictive options available and therefore the order was not rehabilitative in nature.
The court explained its decision to order M.B.'s commitment to the Department of Correction as follows:
[M.B.], I've reviewed the recommendations of Probation [for suspended commitment]. I've gone over while [sic] we were here today. The status of you on parole. Probation's information is parole has filed a violation of your probation ... or parole, and that is pending. Given that your history includes carrying a handgun without a license, the Court has given you placement at Kokomo before sending you to the Department of Corrections. You've been committed under two different cases. You're on parole. You've now been found true of a battery and you've been, back [sic] on using drugs and all indications are from your reports that you don't learn very well from your choices. I do not find probation's recommendations appropriate. At this point I am going to re-commit you to the Department of Corrections, recommend that you get substance abuse counseling while you're there, individual counseling, get into a GED or educational program.
Transcript at 51. Amplifying upon the court's comments, the record indicates that M.B. has had repeated contacts with the juvenile justice system and has been the subject of as many as seven juvenile delinquency complaints. Included in those complaints were allegations of carrying a handgun without a license, two instances of battery, and testing positive for marijuana. He has been arrested twice for being a runaway. He has had true findings entered against him for battery (twice), carrying a handgun without a license, and violation of suspended commitment. These acts all occurred in approximately a two-year period of time, and bespeak a tendency toward violence. He was placed in a rehabilitation facility for a time, and has twice been placed on probation. As the court's comments indicate, M.B., seventeen years old at the time, was on parole for a different offense when he committed *216 the instant offense. With M.B.'s history in mind, and in view of a juvenile court's "wide latitude and great flexibility in dealing with juveniles", C.T.S. v. State, 781 N.E.2d at 1203, we cannot conclude the court abused its discretion in remanding M.B. to the Department of Correction for a period of commitment following his latest brush with the law. See L.L. v. State, 774 N.E.2d 554.
Judgment affirmed.
BAKER, J., and DARDEN, J., concur.
NOTES
[1] Ind.Code Ann. § 35-42-2-2 (West, PREMISE through 2003 1st Regular Sess.).
[2] The author of this opinion was on the panel in K.S. and fully concurred in the original decision of the court.