826 N.E.2d 106 (2005)
C.C., Appellant-Respondent,
v.
STATE of Indiana, Appellee-Petitioner.
No. 39A04-0408-JV-414.
Court of Appeals of Indiana.
April 27, 2005.
Transfer Denied August 11, 2005.
*107 Alison T. Frazier, Eckert, Alcorn, Goering & Sage, LLP, Madison, IN, Attorney for Appellant.
Steve Carter, Attorney General of Indiana, Stephen Tesmer, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

OPINION
BAKER, Judge.
Appellant-respondent C.C. appeals his adjudication as a juvenile delinquent for committing acts that would have been battery, criminal mischief and disorderly conduct if they had been committed by an adult and the order committing him to the Department of Correction (DOC). Specifically, C.C. raises four issues: whether the juvenile court properly acquired jurisdiction over him; whether the juvenile court properly advised him of his rights; whether the juvenile court properly allowed hearsay evidence to be admitted at his dispositional hearing; and whether the juvenile court abused its discretion in ordering him committed to the DOC. Finding that C.C. has waived his jurisdictional argument and finding no other error, we affirm the judgment of the juvenile court.

FACTS
On August 8, 2003, the State filed a delinquency petition against fifteen-year-old C.C., alleging that he had committed battery, which would be a class A misdemeanor if committed by an adult, by punching someone in the jaw and throwing him down on the street. The State later amended the petition to add an additional allegation of battery for slapping a seven-year-old child. An initial hearing was held on September 29, 2003, and the order noted that the juvenile court advised C.C. of his rights, the allegations against him, and the possible dispositions. Appellant's App. p. 148. Thereafter, the State twice more amended the petition to add a third charge of battery, a charge of criminal mischief for damaging a school computer monitor, and a charge of disorderly conduct for fighting. Following another hearing, the juvenile court entered an order on December 2, 2003, finding probable cause to believe that C.C. was a delinquent child and authorizing the filing of a delinquency petition.
On December 16, 2003, the juvenile court conducted a fact-finding hearing and found C.C. to be a delinquent child in that he committed the act of disorderly conduct and set a dispositional hearing for January 21, 2004. The juvenile court found the evidence insufficient to support a true finding *108 on the charge of criminal mischief.[1] After the dispositional hearing, the juvenile court ordered C.C. to attend a three-day per week intensive program offered through St. Vincent's Stress Center in Indianapolis. The juvenile court further ordered that C.C. be released to the custody of his father in order to ensure that C.C. continued with his schooling and that he would attend the program at St. Vincent's.
During January 2004, C.C. was a student in the WINGS program, an alternative education program in Jefferson County for students who have behavioral difficulties in their school. Once admitted to the WINGS program, C.C. regularly failed to attend and called his father to pick him up early many days. On January 17, 2004, C.C. became angry with another student, took a compact disc player, and smashed it against the floor. On February 3, 2004, C.C. got angry and kicked one of the wooden fire doors located at the WINGS school. The door was damaged but operable.
At some point in January 2004, C.C. went uninvited into the home of Christina Galbreath. C.C. grabbed at Christina, put himself on top of her, and offered her money for sex. On one occasion, C.C. entered Christina's home through a window and chased her and her sister around the house. When Christina made C.C. leave, he re-entered the house by using an ID card to open the back door.
On March 8, 2004, the probation department filed a Petition for Modification of the Dispositional Decree because C.C. failed to follow through with the conditions of his probation and because he committed a criminal act by kicking and damaging the door and by committing burglary and harassment against Galbreath. On April 23, 2004, the probation department amended its petition by alleging that C.C. had committed the acts of battery and residential entry against Galbreath.
On April 29, 2004, the juvenile court found that C.C. had violated the terms of his probation by committing criminal mischief, a class B misdemeanor if committed by an adult, sexual battery, a class D felony if committed by an adult, and residential entry, a class D felony if committed by an adult. B.C. Morton, the chief probation officer, thereafter prepared and submitted a pre-dispositional report to the juvenile court, conveying his recommendation that C.C. be committed to the DOC. This recommendation was based on the opinion of Dr. Gillam, a psychiatrist who had previously worked with C.C., that "all that could be done for this child in psychiatric settings had been done and that if he reoffended after discharge from the hospital that DOC would be the appropriate placement." Appellant's App. p. 225.
At the dispositional hearing, the State offered into evidence through Morton a disciplinary report from the Jackson County Juvenile Detention Center where C.C. was being held pending the dispositional hearing. The juvenile court admitted the exhibit over C.C.'s hearsay objection. Morton testified at the hearing that "Dr. Gill[am] very plainly said that if [C.C.] violates again that he does not need to go back through the mental health system; he needs to go to the Department of Corrections *109 [sic] because there's nothing more that the mental health system can provide for [C.C.]." Tr. p. 65. C.C. made no objection to this testimony. The juvenile court ordered that C.C.'s disposition be modified to place him in the DOC for eighteen months, and C.C. now appeals.

DISCUSSION AND DECISION

I. Jurisdiction
C.C. first argues that the juvenile court lacked jurisdiction. Specifically, he contends that the juvenile court failed to strictly comply with the statutory prerequisites for obtaining jurisdiction.
Indiana Code section 31-37-10-2 states:
The juvenile court shall do the following:
(1) Consider the preliminary inquiry and the evidence of probable cause.
(2) Approve the filing of a petition if there is probable cause to believe that:
(A) the child is a delinquent child; and
(B) it is in the best interests of the child or the public that the petition be filed.
C.C. avers that the juvenile court "did not properly obtain subject matter jurisdiction in the proceedings against C.C." because it failed to make specific findings regarding probable cause or findings that filing a delinquency petition was in the best interests of the child or the public. Appellant's Br. p. 9. In support of this proposition, C.C. cites to K.S. v. State, 807 N.E.2d 769 (Ind.Ct.App.2004), in which a panel of this court held that strict compliance with the statutory prerequisites for obtaining jurisdiction at the commencement of delinquency proceedings is required of juvenile courts. In reversing the delinquency adjudication, that panel found that the issue could not be waived even though K.S. did not object to the juvenile court's jurisdiction until raising the issue on appeal. Id. at 775.
Nevertheless, another panel of this court, of which the author of this opinion was a member, recently disagreed with K.S., holding that the requirements of Indiana Code section 31-37-10-2 implicated the juvenile court's jurisdiction over a particular case, not its subject matter jurisdiction. M.B. v. State, 815 N.E.2d 210, 214 (Ind.Ct.App.2004). Failure to object to lack of jurisdiction over a particular case waives that issue for judicial review. Id. Our supreme court has recently granted transfer on K.S., No. 49S04-0503-JV-00076 (transfer granted March 3, 2005). Although the issue has not yet been settled, we are persuaded by the reasoning outlined in M.B., and we will adhere to its rule.
Here, C.C. appeared at the scheduled proceedings, submitting himself to the personal jurisdiction of the juvenile court. Inasmuch as "[a] juvenile court has exclusive original jurisdiction . . . in the following: (1) Proceedings in which a child . . . is alleged to be a delinquent child under IC 31-37," Ind.Code § 31-30-1-1, this court had subject matter jurisdiction over C.C.'s delinquency proceeding. At no point before bringing this appeal did C.C. object to the trial court's jurisdiction over his particular case. Thus, he has waived this argument for appeal.

II. Advisement of Rights
C.C. next urges that his adjudication must be reversed because he was not advised of his rights, the allegations in the petition, or the possible dispositions. Indiana Code section 31-37-12-5 requires the juvenile court to advise the child and the child's parent, guardian or custodian, if the person is present, of the following:
(1) The nature of the allegations against the child.
(2) The child's right to the following:

*110 (A) Be represented by counsel.
(B) Have a speedy trial.
(C) Confront witnesses against the child.
(D) Cross-examine witnesses against the child.
(E) Obtain witnesses or tangible evidence by compulsory process.
(F) Introduce evidence on the child's own behalf.
(G) Refrain from testifying against himself or herself.
(H) Have the state prove beyond a reasonable doubt that the child committed the delinquent act charged.
(3) The possibility of waiver to a court having criminal jurisdiction.
(4) The dispositional alternatives available to the juvenile court if the child is adjudicated a delinquent child.
C.C. contends that there is no evidence that the trial court advised him as required by the statute. However, the juvenile court issued an order on October 3, 2003, following the initial hearing, reflecting that C.C. was advised of his rights, of the allegations in the petition, and of the possible dispositions. Appellant's App. p. 148. On December 2, 2003, following the detention hearing, the juvenile court signed an order reflecting that C.C. and his father were given notice of the time and place of the hearing, of C.C.'s right to counsel and the right not to testify against himself. Appellant's App. p. 163. Moreover, C.C., who was present at all hearings to confront the witnesses against him, was represented by counsel who called witnesses on C.C.'s behalf and cross-examined the State's witnesses. To be sure, there is every indication that the juvenile court advised C.C. of his rights, the allegations in the petition, and the possible dispositions. Therefore, his claim of error must fail.

III. Admission of Evidence
C.C. next avers that the trial court erred in permitting certain evidence to be presented at the disposition stage of the hearing because it violated his Sixth Amendment right to confront witnesses against him under Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Specifically, C.C. contends that the juvenile court should not have admitted the disciplinary report from the Jackson County Juvenile Detention Center or Morton's testimony concerning Dr. Gillam's opinion that C.C. should be placed in the DOC if he reoffended.
The admission or exclusion of evidence is a matter left to the sound discretion of the trial court, and a reviewing court will reverse only upon an abuse of that discretion. B.K.C. v. State, 781 N.E.2d 1157, 1162 (Ind.Ct.App.2003). Thus, we will affirm if there is any evidence supporting the trial court's decision. Id. Moreover, a claim of error in the admission of evidence will not prevail on appeal unless a substantial right of the party is affected. Id. Under Crawford v. Washington, it is now the law that when the prosecution seeks to introduce "testimonial" hearsay into evidence against a criminal defendant, the Confrontation Clause of the Sixth Amendment requires two showings: (1) that the witness who made the statement is unavailable; and (2) that the defendant had a prior opportunity to cross-examine the witness. 124 S.Ct. at 1374.
We first note that C.C. did not object at the hearing to Morton's testimony regarding Dr. Gillam's opinion. Thus, he has waived this contention of error on appeal. See J.V. v. State, 766 N.E.2d 412, 414 (Ind.Ct.App.2002) (holding that the failure to object at trial results in a waiver of the issue on appeal).
*111 In addressing C.C.'s claim that the disciplinary report should not have been introduced, this court observed in Matter of L.J.M., 473 N.E.2d 637, 642-43 (Ind.Ct.App.1985):
Although the hearsay rule applies in a hearing to determine a child delinquent, Simmons v. State, (1978) 175 Ind.App. 333, 371 N.E.2d 1316, it is not applicable to a modification proceeding. Hearsay is prohibited in a delinquency hearing because the court is deciding the guilt or innocence of the child. Thus, the child is entitled to certain constitutional protections, including the right to cross-examine witnesses, a right impinged upon by the use of hearsay evidence. Once a finding of guilt or innocence is made, however, the court must focus on the specific needs of the juvenile to determine the type of disposition that would serve his best interests and that of the community. Excluding hearsay evidence in disposition hearings would in many cases disserve the child by excluding relevant information that might support a less restrictive disposition.

(Emphasis added). In light of the above, it is apparent that the hearsay rule does not apply in juvenile dispositional hearings. Inasmuch as Crawford addresses the right to confront witnesses in the context of hearsay, C.C.'s rights under Crawford were not violated at the disposition hearing. Therefore, C.C.'s claim fails.

IV. Commitment to DOC
Finally, C.C. argues that the juvenile court improperly committed him to the DOC. Specifically, he contends that he should have been given the less harsh and punitive alternative of a suspended commitment so that he could work with his new therapist.
As we noted in M.B.:
After a juvenile has been adjudicated delinquent, choosing a specific disposition is a matter committed to the juvenile court's discretion, subject only to the statutory considerations of the welfare of the child, the safety of the community, and the Juvenile Code's policy of favoring the least harsh disposition. We will overturn a dispositional order only if we determine the court abused its discretion because its conclusion and judgment are clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom.
815 N.E.2d at 215 (internal citations omitted).
The record demonstrates that C.C. had repeated contact with the juvenile court system over the course of ten years of his young life. He had been charged with battery numerous times. He had also been charged with cruelty to animals, criminal mischief, sexual battery, and residential entry. Appellant's App. p. 224. C.C. had been placed at three psychiatric hospitals, and he had been treated in outpatient settings for three different periods. Id. at 225. While at Jackson County Juvenile Detention Center, he was frequently disciplined for misbehavior. Id. He was placed in the most restrictive setting of a special school for problem children with little or no positive effect. Appellant's App. p. 225; Tr. p. 9, 12, 20. Dr. Gillam, C.C.'s psychiatrist, was of the opinion that no more could be done for C.C. in psychiatric settings and that he should go to the DOC if he reoffended. Appellant's App. p. 225. Although we are sympathetic to the fact that C.C. has some psychological disorders for which he was taking medication, the record supports the determination that the less restrictive alternatives had been exhausted. Therefore, we cannot say that *112 the juvenile court abused its discretion in finding that C.C. should be committed to the DOC.

CONCLUSION
In light of the above disposition, we find that C.C. waived his jurisdictional argument for appeal and that the record supports the conclusion that he was advised of his rights, the allegations in the petition, or the possible dispositions. We further find that C.C.'s rights under Crawford were not violated, inasmuch as the rule against hearsay does not apply in juvenile disposition hearings and that the trial court properly placed him in the DOC.
The judgment of the juvenile court is affirmed.
KIRSCH, C.J., concur on parts II, III and IV and concurs in result as to part I and joins in Judge BARNES' separate opinion.
BARNES, J., concurs in parts II, III and IV and concurs in result on part I, with separate opinion.
BARNES, Judge, concurring in result in part and concurring in part.
I concur fully in the majority's resolution of issues two, three, and four. I concur in result on issue one. Although I am the author of the K.S. opinion, I vote to concur on the jurisdictional issue because C.C. apparently was a "veteran" of the juvenile court system. My concern regarding court approval for the filing of a delinquency petition in this type of case is considerably less. When a child comes into the system for the first time, I believe, as I wrote in K.S., that Indiana Code Section 31-37-10-2 requires a finding that it is in the best interests of the child to be "in the system" formally. I am also loath to accept that a juvenile can waive this requirement. Judge Baker is correct that our supreme court has taken transfer in K.S., but until it decides the merits of the jurisdictional question involved, I believe my analysis to be tenable and correct in light of existing precedent.
Here, however, C.C. had had extensive involvement in the juvenile delinquency system as a result of a 2001 delinquency petition and finding, including an extended stay at a residential facility. That petition and finding apparently have never been challenged. Nevertheless, shortly after he was released from the facility, C.C. found himself the subject of the August 2003 delinquency petition that is the basis of the present appeal. Pursuant to my reasoning in a recent concurring opinion, the concerns of K.S. are not present here. B.R. v. State, 823 N.E.2d 301, 308 (Ind.Ct.App. 2005) (Barnes, J., concurring in result). Accordingly, I conclude that absolute, strict, non-waivable compliance with Indiana Code Section 31-37-10-2 was not required in this case and would affirm on that basis. I fully agree with the reasoning behind the resolution of the remaining issues.
NOTES
[1] One of the battery charges was apparently dismissed inasmuch as the juvenile court noted in its order that it "cannot rule on the Request and Amend Delinquency Petition filed December 5, 2003 [the third battery charge]. There was no Amended Petition before the Court on which to base a decision." Appellant's App. p. 188. The record does not disclose what became of the remaining two battery charges, and we can only assume that they were dismissed because C.C. was adjudicated to be a delinquent based only upon the charge of disorderly conduct.