## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 25 2016, 6:05 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew D. Anglemeyer
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

J. T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

**D. B.,**

*Appellant-Respondent,*

v.

**State of Indiana,**

*Appellee-Petitioner.*

October 25, 2016

Court of Appeals Case No.
49A02-1512-JV-2217

Appeal from the Marion Superior Court

The Honorable Marilyn Moores, Judge

The Honorable Gary Chavers, Magistrate

Trial Court Cause No.
49D09-1508-JD-1490

**Riley, Judge.**

## STATEMENT OF THE CASE

[1] Appellant-Defendant, D.B., appeals his delinquency adjudication for two Counts of rape, Level 3 felonies if committed by an adult, Ind. Code § 35-42-4-1.

[2] We affirm.

## ISSUE

[3] D.B. raises one issue on appeal, which we restate as: Whether the trial court abused its discretion in admitting certain evidence.

## FACTS AND PROCEDURAL HISTORY

[4] In the summer of 2015, D.B. and S.M. were sophomores at Ben Davis High School in Indianapolis, Indiana. Fifteen-year-old D.B. was a wide receiver for the school's football team. Sixteen-year-old S.M. was the school's football team manager and responsible for the players' equipment and uniforms. S.M. became acquainted with D.B. in her freshman year and they regularly interacted during football practice. At the end of football practice on August 11, 2015, D.B. took S.M.'s phone and messaged "Heyy" to his own phone through an instant messaging software application known as "Kik." (State's Exh. 3, p.1). Later that evening, the two exchanged flirtatious messages and had three Facetime (*i.e.*, video chat) conversations. The following day, on August 12, 2015, after football practice, D.B., S.M., and other friends, remained in the trainer's room to talk and play. After everyone had left, S.M. and D.B. walked together, taking S.M.'s usual route home. D.B. stopped

behind the bleachers near the parking lot, and asked S.M. to come close. S.M., who was talking with another person on her cell phone, stated no and began laughing. At that point, D.B. grabbed S.M. by the belt and he pulled her towards him. S.M. put her phone away, and D.B. tried to undo her belt but S.M. grabbed D.B.'s hand, and she stated no. Despite S.M.'s refusal, D.B. reached down S.M.'s pants and penetrated S.M.'s vagina with his finger. S.M. was shocked. According to S.M., they were no longer standing by the bleachers, they were standing between two cars in the parking lot. D.B. pulled down S.M.'s pants, turned her around, and forced her to bend over against one of the vehicles. D.B. proceeded to penetrate S.M.'s vagina with his penis; however, because S.M. tensed up, it made it difficult for D.B. to penetrate her vagina. In an attempt to penetrate her vagina, D.B. spread S.M.'s vagina with his two fingers, and inserted his penis. To some extent, D.B. succeeded in penetrating S.M.'s vagina, by moving past her vaginal lips. According to S.M., D.B. tried to penetrate her vagina "too many" times. (Tr. p. 59). It hurt S.M. After several attempts, D.B. gave up trying to penetrate S.M.'s vagina, pulled up his pants and informed S.M. that his mother had arrived to pick him up. S.M. also pulled up her pants, hugged D.B. goodbye, and walked home.

[5] Nearby, and from inside the high school, by Door 12, custodian Michael Short (Custodian Short) was working, and when he looked outside into the parking lot, he saw what he would describe as a sex act between a male and a female, and after the act, he saw them pull up their pants, hug, and leave. Custodian Short was able to identify the male in the parking lot as D.B.

[6] S.M. cried on her way home. When she arrived, S.M. went straight to her bedroom. S.M. was in pain, she could not sit down, and when she put on her pajamas, she noticed blood in her underwear. S.M. contacted her friend E.H., who advised her how to clean up the bloody underwear. That same evening, S.M. texted D.B. via Kik where she stated that she did not want the sex act to happen, reminded him that she had told him "no," and that she could not even sit down because of the pain. (Tr. p. 71). D.B. wrote back "L-O-L," which means "lots of laughs." (Tr. p. 72). D.B. told S.M. to lie to her family that she got injured. (Tr. p. 72). S.M. expressed to D.B. that she felt violated, and D.B. wrote back, "Awh." (Tr. p. 72). S.M. additionally texted D.B. that she told him to stop, and D.B. responded by stating, "So?" (Tr. p. 73). The following day, S.M. reported the incident to a school official, who, in turn, contacted the police. When the police arrived, they interviewed S.M., and S.M. was later taken to the hospital where she was examined by nurse Cantana Phillips (Nurse Phillips). Upon examining S.M., Nurse Phillips found a lot of redness and abrasions to the exterior of S.M.'s vagina, as well as abrasions on each side of her vaginal walls. S.M. "verbalized that she was in pain." (Tr. p. 191).

[7] Shortly after S.M. reported the incident to a school official, the dean of students, Dean Stanton (Dean Stanton), summoned D.B. and informed him of the rape allegations against him by S.M. D.B. was requested to provide a written statement of his version of events. On August 19, 2015, D.B. offered a written response where he reported that it was S.M. who initiated sexual touching, *i.e.,* D.B. indicated that S.M. hit him in the private area, and he, in

turn, hit S.M. in the private area. D.B. added that at S.M.'s request, he put his hand inside S.M.'s pants.

[8] On August 19, 2015, the State filed a petition, alleging D.B. was a delinquent child because he committed two offenses of rape, which would be Level 3 felonies if committed by an adult. On September 17, 2015, the juvenile court conducted a fact-finding hearing. S.M., S.M.'s friend—E.H., Custodian Short, Nurse Phillips, Dean Stanton, and D.B., testified. On September 18, 2015, the juvenile court found both allegations to be true. On November 25, 2015, the juvenile court placed D.B. on probation with a suspended commitment to the Department of Correction. D.B. was placed in the Resolute Treatment Facility to participate in a sex offense treatment program, and the juvenile court allowed for D.B.'s transfer into the Polaris Group Home if the Resolute Treatment Facility agreed with the transfer.

[9] D.B. now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

[10] D.B. argues that the juvenile court abused its discretion in admitting impeachment evidence. Specifically, during cross-examination, the State introduced evidence of an allegation against D.B., in which a girl had alleged that D.B. had touched her private area during the previous school year.

[11] The juvenile court has broad discretion in ruling on the admissibility of evidence. *See C.C. v. State*, 826 N.E.2d 106, 110 (Ind. Ct. App. 2005), *trans.*

*denied*. We will reverse only upon an abuse of that discretion. *Id*. An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court. *See Berry v. State*, 967 N.E.2d 87, 90 (Ind. Ct. App. 2012).

[12] On direct examination, by his counsel, D.B. was asked if he had experienced any other disciplinary problems at school, and he stated, "[N]o, sir." (Tr. p. 218). Based on that testimony, on cross-examination, the State sought to impeach D.B. by asking him about a sexual harassment claim in which a girl at D.B.'s school had alleged that D.B. had touched her private area with his leg. The juvenile court overruled D.B.'s objection to the State's questioning about his prior disciplinary problems.

[13] D.B. contends that although he was suspended for sexually harassing a girl in 2014, he refuted that assertion at his hearing, and the State failed to present evidence that the allegation was substantiated. Accordingly, D.B. posits that the sexual harassment allegation was irrelevant and had no tendency to make S.M.'s allegations of rape more probable.

[14] We initially note that Indiana Evidence Rule 401 provides a liberal standard for relevancy, and appellate courts review a trial court's ruling on relevance for an abuse of discretion. *Konopasek v. State*, 946 N.E.2d 23, 27 (Ind. 2011). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id*. (quoting Ind. Evidence

Rule 401). Further, Ind. Evidence Rule 607 provides that the credibility of a witness may be attacked by any party. Indiana Evidence Rule 616 explicitly makes "evidence of bias, prejudice, or interest of the witness for or against any party" relevant and admissible for impeachment purposes, as this evidence can impact the weight of the witness's testimony. *Id* at 27-28. Our supreme court has stated, however, that Evidence Rule 616 "should be read in conjunction with Rule 403's required balancing of probative value against the danger of unfair prejudice." *Ingram v. State*, 715 N.E.2d 405, 407 (Ind. 1999). Evidence Rule 403 reads, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."

[15] Here, D.B. testified that he had not experienced any disciplinary issues at his school, other than the instant case. D.B.'s testimony left the juvenile court with the impression that he was an honest person. Given that D.B. had asserted that it was S.M. who initiated the sexual acts during direct-examination, a focal point in this case was his credibility as a witness. Therefore, during cross-examination, the State inquired into D.B.'s suspension in 2014 with regards to a sexual harassment allegation, so as to show that D.B. was lying when he stated that he never encountered disciplinary problems at his school. Evidence that he was not truthful was therefore relevant, and the trial court did not abuse its discretion in admitting this evidence.

[16] We further find that the probative value of the evidence was not outweighed by unfair prejudice. *See* Evid. R. 403. S.M. provided unequivocal testimony regarding her sexual encounter with D.B. in August of 2015. S.M. stated that she and D.B. were walking home, D.B. stopped by the bleacher and pulled her towards him. D.B. tried to undo her belt but S.M. grabbed D.B.'s hand, and she stated no. Despite S.M.'s refusal, D.B. reached into S.M.'s pants and penetrated S.M.'s vagina with his finger. In addition, D.B. pulled down S.M.'s pants, turned her around, and forced her to bend over against one of the vehicles. D.B. tried to penetrate S.M.'s vagina with his penis; however, because S.M. tensed up, it made it difficult for D.B. to penetrate her vagina. At that point, D.B. spread S.M.'s vagina with his two fingers, and inserted his penis. D.B. succeeded in slightly penetrating S.M.'s vagina, by moving past her vaginal lips. That evening, S.M. texted D.B. that she did not want it to happen, reminded him that she had told him "no," and told him that she could not even sit down because of the pain. Other than S.M.'s testimony, the State introduced corroborating evidence through Nurse Phillips, who conducted the sexual assault examination indicating redness and abrasions on S.M.'s vaginal walls which were consistent with non-consensual sex.

[17] Upon review, we are satisfied that, in light of S.M.'s unequivocal testimony regarding her sexual encounter with D.B., and other corroborating evidence, we find that there is no substantial likelihood that the evidence of D.B.'s previous suspension in relation to a sexual harassment allegation contributed to his

conviction. Accordingly, we conclude that the juvenile court did not abuse its discretion in admitting the impeachment evidence.

CONCLUSION

[18] Based on the foregoing, we find that the juvenile court properly admitted the impeachment evidence.

[19] Affirmed.

[20] Bailey, J. and Barnes, J. concur