**Kevin L. DAVIS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–9602–CR–77.

Court of Appeals of Indiana.

Nov. 13, 1996.

Thomas L. Blackburn, Indianapolis, for Appellant.

Pamela Carter, Attorney General, Priscilla J. Fossum, Deputy Attorney General, Indianapolis, for Appellee.

**OPINION**

KIRSCH, Judge.

Kevin L. Davis appeals his conviction for disorderly conduct,[1] a Class B misdemeanor, claiming the evidence was insufficient.

We reverse.

---

1. *See* IC 35–45–1–3(1).

## FACTS AND PROCEDURAL HISTORY

On July 27, 1995, Officer Marlene Neitzel of the Indianapolis Police Department was patrolling in the 4000 block of North Carrollton Avenue. This particular area of Indianapolis was then in its third day of a riot. The rioting activity had included looting of businesses, breaking windows, stopping cars that were attempting to drive through the area, breaking windshields of cars driving by, throwing "molotov cocktails" at police officers, throwing rocks at police cars, and throwing bricks at police cars and other cars in the area. *Record* at 34. Civilians and police officers had suffered injury during the rioting activity.

Officer Neitzel was a part of a mobile field force deployed for the purpose of riot control. The force was driving through the area and asking people to clear the streets. While so deployed, Officer Neitzel and three of her fellow officers came upon Davis and three companions standing near a Honda automobile and another car outside a residence. Davis was standing next to the Honda with his hand inside the window of the car. The police officers asked Davis and the other men to either go up on the porch or inside the residence. The men did not respond, and Davis continued to stand by the Honda with his hand inside the window. The police officers asked the men to clear the street a second time, and, again, the men did not respond. On the third request, the three companions started to move slowly away from the cars, but Davis continued to be hesitant about removing his hand from the car.

The police officers then got out of their car and arrested Davis and the three other men. As the police officers were making the arrest approximately "one or two hundred people were coming out of their houses and coming down on" the officers. *Record* at 26. Officer Neitzel testified regarding the reason Davis and his companions were arrested: "Due to everything that was going on in the area, they were asked to leave the area, they would not. Due for the safety of everyone in the area as well as everyone involved they

were placed under arrest." *Record* at 52. A pat-down search revealed a handgun in Davis' possession.[2] Davis consented to a search of his automobile, which revealed a loaded shotgun and another firearm in the trunk.[3]

Davis was charged with disorderly conduct for "Engag[ing] in fighting or in conduct that resulted in or was likely to result in serious bodily injury to a person or substantial damage to property, specifically: refused to obey officer's commands to leave a civil disturbance that erupted into looting." *Record* at 8. Following a bench trial, the court convicted Davis of this charge. Davis appeals.

## DISCUSSION AND DECISION

When reviewing claims of insufficient evidence, this court considers only the evidence and the reasonable inferences arising therefrom which support the judgment. *Barnett v. State*, 637 N.E.2d 826, 832 (Ind.Ct.App. 1994). Without weighing the evidence or determining witness credibility, we will affirm a conviction if the evidence and inferences establish that a trier of fact could reasonably conclude that the defendant was guilty beyond a reasonable doubt. *Boushehry v. State*, 648 N.E.2d 1174, 1176 (Ind.Ct. App.1995). The State has the burden of proving a defendant's guilt of each element of a crime beyond a reasonable doubt. *Miller v. State*, 634 N.E.2d 57, 61 (Ind.Ct.App.1994).

Davis was convicted under subsection one of the disorderly conduct statute which provides that "[a] person who recklessly, knowingly, or intentionally ... engages in fighting or in tumultuous conduct ... commits disorderly conduct, a Class B misdemeanor." No issue has been presented concerning whether Davis engaged in fighting. Rather, the issue on appeal is whether Davis engaged in tumultuous conduct.

Tumultuous conduct is defined by statute as "conduct that results in, or is likely to result in, serious bodily injury to a person or substantial damage to property." IC 35–45–1–1. There has been only one instance in

---

2. Davis was acquitted of carrying a handgun without a license.

3. No charges were filed in connection with either of these firearms.

which Indiana courts have considered the question of tumultuous conduct in the context of the sufficiency of the evidence to support a disorderly conduct conviction. In *Whitley v. State*, 553 N.E.2d 511 (Ind.Ct.App.1990), this court affirmed a disorderly conduct conviction arising out of a "neighborhood disturbance involving black women and white women." *Id.* at 512. The police arrived at the disturbance and were able to separate the two groups. As the police were taking the white women back to the women's apartment, Whitley continued to yell at the white women. When one of the police officers gently touched Whitley's arm and asked her to step aside, she pulled away and began cursing and yelling at the officer. The officer threatened to arrest Whitley if she did not calm down. When Whitley continued to scream and yell, she was arrested. Whitley struggled and continued to yell as the police officers placed handcuffs on her.

In analyzing whether Whitley's conduct was disorderly, this court stated that the statutory definition of tumultuous conduct was "unambiguous" and that it contemplated "physical activity rising to the level of serious bodily injury, substantial property damage, or that either is *likely* to occur." *Id.* at 513. The court held that Whitley's conduct satisfied the statutory definition either by her struggle with police or by her conduct prior to her arrest "[g]iven the racial nature of the confrontation that night." *Id.* at 514. Whitley's conduct prior to arrest was tumultuous because "it could have led to a fight between the two groups which was likely to result in serious bodily injury." *Id.*

In reaching its decision, the court relied in part on *Gebhard v. State*, 484 N.E.2d 45 (Ind.Ct.App.1985), although, as the court noted, *Gebhard* involved the adequacy of a charging information, not the sufficiency of the evidence. In *Gebhard*, the defendant was convicted under the tumultuous conduct section of the disorderly conduct statute for "walking out into the hallway of [an] apartment house . . ., and displaying a .45 caliber handgun in his hand with the purpose of confronting anyone in the hallway . . . ." *Id.* at 47. As in *Whitley*, the court stated that the statutory definition of tumultuous con-

duct "contemplates physical activity on [the defendant's] part rising to the level that either people are seriously injured or property substantially damaged, or that either is likely to occur." *Id.* at 48. The court also explained that the words "engages in" contained in the disorderly conduct statute "obviously requires present, completed conduct which is likely to injure persons." *Id.* The court ultimately reversed Gebhard's conviction, holding that the information alleged "an offense that may happen, a future act, a contingency, that is, a chance encounter with some person or persons. Walking in an empty hall with a pistol is not tumultuous conduct because it does not rise to the level that persons are immediately likely to be seriously injured." *Id.*

■ The conduct at issue here is more like that found insufficient in *Gebhard* than that found criminal in *Whitley*. There was never an allegation that Davis' conduct resulted in serious injury to any person or substantial damage to any property. His conviction, therefore, must rest on whether any such injury or damage was likely to occur. In *Gebhard*, the conduct was found not to be tumultuous because it did not "rise to the level that persons are *immediately* likely to be seriously injured." 484 N.E.2d at 48 (emphasis added). Thus, the term "likely," as used to define tumultuous conduct, includes a temporal requirement of immediacy.

Here, Davis' conduct was not likely to result in personal injury or property damage. There is no evidence in the Record that there were any people nearby that could have been immediately injured when Davis ignored the officer's request to clear the street. Similarly, there is no evidence in the Record that there was any property in danger of immediate damage when Davis defied the officer's request. The fact that personal injury and property damage had been occurring in the area over a three-day period does not establish that Davis' conduct was in any way connected with such injury and damage. Further, the Record contains no evidence to support the allegation in the charging information that the civil disturbance erupted into looting as a result of Davis' conduct.

We are not unsympathetic to the difficulties confronting police officers trying to control riot situations. The refusal to obey the police order in the present case, however, did not rise to the level of tumultuous conduct as that term is defined. There was insufficient evidence to support Davis' conviction for disorderly conduct.

Reversed.

SULLIVAN and BARTEAU, JJ., concur.