**v.**

**STATE of Indiana, Appellee–Plaintiff.**

No. 35A02–0204–JV–305.

Court of Appeals of Indiana.

Dec. 9, 2002.

Jill M. Denman, Matheny, Michael, Hahn & Bailey, L.L.P., Huntington, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Grant H. Carlton, Deputy Attor-

ney General Indianapolis, IN, Attorneys for Appellee.

**OPINION**

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, J.J.M., a juvenile, appeals an adjudication finding him to be a delinquent child for committing sexual battery, Ind.Code § 35–42–4–8, an act which would be a Class D felony if committed by an adult.

We affirm in part, vacate in part, and remand.

### ISSUE

J.J.M. raises two (2) issues on appeal, which we restate as follows:

1. Whether the State presented sufficient evidence to support the finding for sexual battery.

2. Whether the trial court's dispositional order for J.J.M. was proper.

### FACTS AND PROCEDURAL HISTORY

On December 4, 2001, J.J.M. and B.H. both attended Huntington North High School in Huntington, Indiana. During their fourth period class, both students were in Mr. Bartoff's (Bartoff) English class. On this date, the students in Bartoff's fourth period class were working on a class project in the computer lab located in the high school's library. While in the library, B.H. was working on her class project at one of the computers in the room when J.J.M. walked up behind her, put his leg around her shoulder and began moving his hips. B.H. immediately asked J.J.M. to stop. Subsequently, J.J.M. told B.H. to "give him head" and then grabbed her head with both of his hands and pulled her head toward his crotch. (Tr. p. 41). J.J.M. held B.H.'s head against his body

and began moving his hips. B.H. again yelled at J.J.M. to stop and tried to pull away from him. During the incident, teaching assistant, Gloria Holzinger (Holzinger), witnessed J.J.M.'s actions toward B.H. and ordered J.J.M. to stop and to get away from her. Holzinger, noticing that B.H. was upset with J.J.M., took B.H. out of the computer lab with her.

Thereafter, J.J.M. continued to walk around the computer lab, with headphones on, making rude gestures to some of the other females in the classroom. Specifically, J.J.M. stated that he wanted to "slap some bootie and was making thrusting motions with the bottom—his extremities." (App. p. 83). In addition, J.J.M. proceeded to stand behind another female in the class and made thrusting motions behind her.

On December 6, 2001, a detention hearing was held in regards to J.J.M. As a result, the juvenile court detained J.J.M. at the Evergreen Juvenile Detention Facility, secured unit. On or about December 14, 2001, the State filed a Petition Alleging Delinquency charging J.J.M. with sexual battery, I.C. § 35–42–4–8, an act which would be a class D felony, if committed by an adult. On December 31, 2001, J.J.M. denied the allegations of the Petition Alleging Delinquency. On March 4, 2002, the State filed a Motion to Amend the Petition Alleging Delinquency adding an additional count of battery, I.C. § 35–42–2–1, a class B misdemeanor, if committed by an adult.

On March 6, 2002, the juvenile court held a fact-finding hearing. The juvenile court found J.J.M. to be a delinquent child in Count I, sexual battery, a class D felony, if committed by an adult. The juvenile court dismissed Count II, battery, a class B misdemeanor, if committed by an adult. On March 18, 2002, a dispositional hearing

was held. On the same date, the juvenile court placed J.J.M. in the Indiana State Boys School until released by the Department of Correction and ordered J.J.M. to serve probation for at least one (1) year after his release from the Indiana State Boys School. Additionally, the juvenile court issued a protective order for B.H.

J.J.M. now appeals. Additional facts will be supplied as necessary.

## DISCUSSION AND DECISION

### I. Sufficiency of the Evidence

J.J.M. argues that the State did not present sufficient evidence to support his adjudication of delinquency for sexual battery, a class D felony, if committed by an adult. Specifically, J.J.M. claims that the State failed to prove that, when J.J.M. touched B.H., he compelled her to submit to the touching by force or the imminent threat of force. Additionally, J.J.M. argues that the State failed to prove that he touched B.H. with the intent to arouse or satisfy either his own sexual desires or the sexual desires of another person as required by I.C. § 35–42–4–8.

In reviewing sufficiency of the evidence claims, this court does not reweigh the evidence or judge the credibility of the witnesses. *Mabbitt v. State*, 703 N.E.2d 698, 700 (Ind.Ct.App.1998). We consider only the evidence most favorable to the judgment and the reasonable inferences therefrom and will affirm if there is substantial evidence of probative value to support the conclusion of the trier of fact. *See id.* Reversal is only appropriate when reasonable persons would be unable to form inferences as to each material element of the offense. *Id.*

In the present case, the State charged J.J.M. with sexual battery pursuant to I.C. § 35–42–4–8, which provides, in pertinent part, that:

A person who, with intent to arouse or satisfy the person's own sexual desires or the sexual desires of another person, touches another person when that person is ... compelled to submit to the touching by force or the imminent threat of force ... commits sexual battery, a Class D felony.

Thus, to adjudicate J.J.M. for sexual battery of B.H., the State was required to prove that J.J.M.: (1) with intent to arouse or satisfy his own sexual desires; (2) touched B.H.; (3) when B.H. was compelled to submit to the touching by force or threat of force. *See* I.C. § 35–42–4–8.

First, J.J.M. argues that the evidence supporting his adjudication was insufficient because the State did not prove that B.H. was compelled to submit to the touching by force or threat of force. However, evidence that a victim did not voluntarily consent to a touching does not, in itself, support the conclusion that the defendant compelled the victim to submit to the touching by force or threat of force. *Bailey v. State*, 764 N.E.2d 728, 730 (Ind. Ct.App.2002). In fact, not all touchings intended to arouse or satisfy sexual desires constitute sexual battery; rather, only those in which the person touched is compelled to submit by force or the imminent threat of force violate I.C. § 35–42–4–8. *Id.* However, the force need not be physical or violent, but may be implied from the circumstances. *Id.* Under the specific facts here, we disagree with J.J.M.'s claim that we must reverse his adjudication because of insufficient evidence.

The language employed in I.C. § 35–42–4–8 demonstrates that our legislature intended for us to consider the victim's perspective, not the assailant's, when determining whether the presence or absence of forceful compulsion existed. *See Bailey*, 764 N.E.2d at 731. As a result, to

determine whether B.H. was compelled to submit to J.J.M.'s touching by force or threat of force, we use a subjective test that looks to the victim's perception of the circumstances surrounding the incident in question. *Id.* The issue, then, becomes whether B.H. perceived that she was compelled to submit to J.J.M.'s touch by force or imminent threat of force.

■ In the present case, J.J.M. had previously approached B.H. from behind while she was sitting at a computer, put his leg over her shoulders, and moved his hips. B.H. responded by telling J.J.M. to stop; however, J.J.M. did not immediately stop. Later, J.J.M. proceeded to grab B.H.'s head and moved it towards his crotch, until contact was made. B.H. testified that she did not give permission to J.J.M. to touch her and that he forcibly kept her head against his body. Consequently, B.H. was very upset with J.J.M.'s actions directed toward her and was not laughing but rather yelling at J.J.M. to stop harassing her. The record reveals that B.H. tried to pull her head away from J.J.M.'s hold, but that he forcibly kept her head in contact with his body. Although J.J.M. and B.H. had previously laughed and spoken in class, B.H. testified that she was not laughing when J.J.M. continued to touch her inappropriately. Thus, one could reasonably infer from these two encounters that B.H. had reason to fear J.J.M. As such, we find that the evidence supports a finding that B.H. was compelled to submit to the touching by threat and physical force. *See Bailey,* 764 N.E.2d at 731.

■ Next, J.J.M. claims that the evidence is insufficient to support the intent element of sexual battery. Specifically, J.J.M. claims that the evidence was insufficient to show that he touched B.H. with the intent necessary to arouse or satisfy either his own sexual desires or the sexual desires of another person as required by I.C. § 35–42–4–8. A person's intent may be determined from their conduct and the natural consequences thereof and intent may be inferred from circumstantial evidence. *J.H. v. State,* 655 N.E.2d 624, 626 (Ind.Ct.App.1995). Furthermore, the intent to gratify required by the statute must coincide with the conduct; it is the purpose or motivation for the conduct. *DeBruhl v. State,* 544 N.E.2d 542, 546 (Ind.Ct.App.1989).

■ Here, the record reveals that prior to the incident, J.J.M. was making comments and touching other females in his class. Specifically, J.J.M. was calling the females in his class "skanks and ho's" and saying that he wanted them to "get up and clap it for him," which means shake their derrières. (Tr. p. 39) Additionally, the record reveals that before J.J.M. grabbed B.H.'s head and pulled it towards his crotch, he told her to "give him head." Further, B.H. testified that she told J.J.M. to stop and when he finally released her head, J.J.M. stated, ". . . fine, if I can't get you then I'll go to somebody else." J.J.M. then proceeded to another female in the class and began to touch her and make thrusting motions behind her chair. (Tr. pp. 42–43, Appellant's App. p. 87). The natural and usual sequence of J.J.M.'s conduct is that he intended to satisfy his sexual desires by grabbing B.H.'s head and pulling it towards his crotch and forcibly holding it there. *See DeBruhl,* 544 N.E.2d at 546. Additionally, J.J.M.'s surrounding actions and comments to other females in the classroom that day support the contention that he was satisfying his own sexual desires. *See J.H.,* 655 N.E.2d at 626. Therefore, we hold that the evidence is sufficient to support the juvenile court's finding that J.J.M. touched B.H. with the specific intent to arouse or satisfy his sexual desires. *See Id.*

## II. Trial Court's Dispositional Order

█ Lastly, J.J.M. contends that the juvenile court erred when it entered its dispositional order. Specifically, J.J.M. argues that the juvenile court violated I.C. § 31–30–2–1 when it ordered him to be placed on probation for at least one (1) year following his release from the Indiana State Boys School and issued a protective order.

I.C. § 31–30–2–1, provides, in pertinent part:

The juvenile court's jurisdiction over a delinquent child or a child in need of services and over the child's parent, guardian, or custodian continues until:

(1) the child becomes twenty-one (21) years of age, unless the court discharges the child and the child's parent, guardian, or custodian at an earlier time; or

(2) guardianship of the child is awarded to the department of correction.

█ A juvenile court that retains jurisdiction over a juvenile may modify a dispositional decree so long as it retains such jurisdiction. *W.L. v. State*, 707 N.E.2d 812, 814 (Ind.Ct.App.1999). In the instant case, however, the juvenile court discharged J.J.M. upon entry of the dispositional decree to the Indiana Boys School and thus did not retain jurisdiction. After being divested of jurisdiction, the juvenile court may reacquire jurisdiction only through the means set forth in I.C. § 31–30–2–3.[1] *Id.* Our examination of the record reveals that the juvenile court did not have authority to reassume jurisdiction over J.J.M. through I.C. § 31–30–2–3 or in any other manner authorized by statute because the Indiana State Boys School has not released J.J.M. from its custody. As a result, the juvenile court did not have jurisdiction to order probation and the protective order within the dispositional order. *Id.* Thus, the juvenile court erred in ordering probation and the protective order within the dispositional order. Therefore, we vacate the juvenile court's provisional order and remand for entry of a new dispositional order consistent with this opinion.

### CONCLUSION

Based on the foregoing, we conclude that J.J.M. was properly found to be a delinquent child for committing sexual battery. Further, we conclude the trial court improperly ordered probation and a protective order within its dispositional order.

Affirmed in part, vacated in part, and remanded.

MATTINGLY–MAY, J., and ROBB, J., concur.

---

1. I.C. § 31–30–2–3 provides that a court may, for the purpose of modifying the dispositional decree, reinstate jurisdiction over a child within thirty (30) days after receiving notification from the department of correction that a child over whom the department has guardianship has been released from its custody. *See W.L.*, 707 N.E.2d at 813.