In the Matter of B.R., Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0404–JV–322.

Court of Appeals of Indiana.

March 3, 2005.

Jan B. Berg, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Grant H. Carlton, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

B.R. appeals the juvenile court's adjudication that he committed the delinquent act of disorderly conduct, a Class B misdemeanor if committed by an adult, and presents the following issues for our review:

1. Whether the juvenile court properly invoked its jurisdiction.

2. Whether there is sufficient evidence to support the delinquency adjudication.

We affirm.

### FACTS AND PROCEDURAL HISTORY

On February 2, 2004, B.R. initiated an argument with a fellow student at Emmerich Manual High School in Indianapolis. While the two were standing face to face, B.R. pulled out an opened knife and pointed it at the other student. After seeing the knife, the other student struck B.R. and left the scene.

The State filed a delinquency petition against B.R. for disorderly conduct. There is no record that the juvenile court expressly approved the filing of that petition. The juvenile court found the delinquency allegation to be true and placed B.R. in the custody of the Department of Correction for a recommended period of twelve months. This appeal ensued.

### DISCUSSION AND DECISION

#### Issue One:  Jurisdiction

Juvenile courts are courts of limited jurisdiction. *Phares v. State*, 796 N.E.2d 305, 307 (Ind.Ct.App.2003). Their jurisdiction must be invoked by establishing the statutory jurisdictional prerequisites. *Id.* When jurisdictional facts are not in dispute, the question of whether a lower court had jurisdiction over a juvenile proceeding is reviewed de novo. *Id.*

#### A.  Approval Requirement

B.R. first contends that his delinquency adjudication should be vacated because the juvenile court failed to follow the neces-

sary statutory prerequisites to obtain jurisdiction in this matter. Specifically, he argues that the juvenile court failed to expressly authorize the filing of a delinquency petition in accordance with Indiana Code Section 31–37–10–2. That statute provides:

> The juvenile court *shall* do the following:
> (1) Consider the preliminary inquiry and the evidence of probable cause.
> (2) *Approve the filing of a petition* if there is probable cause to believe that:
> (A) the child is a delinquent child; and
> (B) it is in the best interests of the child or the public that the petition be filed.

Ind.Code § 31–37–10–2 (emphases added).

■ In support of his argument, B.R. cites our decision in *K.S. v. State*, 807 N.E.2d 769 (Ind.Ct.App.2004), *aff'd on reh'g*, 816 N.E.2d 1164 (Ind.Ct.App.2004), *trans. pending*. In that case, we applied the long-standing and well-settled principle that certain steps must be taken before the commencement of a juvenile delinquency proceeding, including express court approval for the filing of a delinquency petition. *Id.* at 770–71 (citing, e.g., *Taylor v. State*, 438 N.E.2d 275, 277 (Ind.1982)). We agree with B.R. that the juvenile court erred when it did not expressly approve the filing of the delinquency petition.

The concurring opinion[1] attempts to distinguish *K.S.* from the instant case and asserts that the juvenile court properly assumed jurisdiction over B.R. because strict compliance with the statutory prerequisites to obtaining juvenile jurisdiction

is necessary only when a juvenile does not have a history of delinquency adjudications. *See* op. at 302.[2] But our legislature has specified the circumstances under which a juvenile court may retain jurisdiction over a juvenile. *See* Ind.Code §§ 31–30–2–1, 31–30–2–3. According to Indiana Code Section 31–30–2–1:

> (a) [T]he juvenile court's jurisdiction over a delinquent child ... and over the child's parent, guardian, or custodian continues until:
> (1) the child becomes twenty-one (21) years of age, unless the court discharges the child and the child's parent, guardian, or custodian at an earlier time; or
> (2) guardianship of the child is awarded to the department of correction.

I.C. § 31–30–2–1; *see In re Tina T.*, 579 N.E.2d 48, 61 (Ind.1991). Further, after being divested of jurisdiction, the juvenile court may reacquire jurisdiction only through the means set forth in Indiana Code Section 31–30–2–3. *J.J.M. v. State*, 779 N.E.2d 602, 607 (Ind.Ct.App.2002). That statute permits the juvenile court to reinstate jurisdiction for the purpose of modifying its original dispositional decree, but reinstatement must occur within thirty days of receiving notice of the date on which the Department of Correction intends to release a child from its custody. *See* I.C. § 31–30–2–3; *J.J.M.*, 779 N.E.2d at 607 n. 1 (citing *W.L. v. State*, 707 N.E.2d 812, 813 (Ind.Ct.App.1999)).

In *S.W.E. v. State*, 563 N.E.2d 1318, 1320–22 (Ind.Ct.App.1990), this court was

---

1. Because we believe that B.R. has waived any claim of jurisdictional error by failing to object to it during the delinquency proceeding, we agree with the concurring opinion only to the extent that B.R.'s delinquency adjudication withstands jurisdictional challenge. *See* Part B, *infra*.

2. B.R. has been adjudicated a delinquent on several previous occasions. In contrast, K.S. had no history of juvenile offenses. *See K.S.*, 807 N.E.2d at 773 n. 5.

presented with the same issue raised by B.R., namely, whether the juvenile court acquired jurisdiction when it did not approve the filing of the delinquency petition.[3] On April 19, 1989, S.W.E. had been adjudicated delinquent for the illegal consumption of alcohol by a minor and was placed on six months' probation. *Id.* at 1319. Later that same month, S.W.E. was also charged with delivery of a schedule I controlled substance, which formed the basis for his appeal. *Id.* This court acknowledged that the juvenile court did not follow the required procedural steps to obtain jurisdiction but, nevertheless, held that the court had already acquired jurisdiction in the prior delinquency adjudication. *Id.* at 1321. But the very next paragraph of the opinion clarifies that holding:

> Pursuant to Indiana Code Section 31–6–2–3 the juvenile court's jurisdiction over any delinquent child continues until the child reaches his twenty-first birthday unless the court before then either discharges the child or awards guardianship of him to the [D]epartment of [C]orrections [sic]. *None of those events had occurred when the delinquency petition regarding delivery of a controlled substance was filed and the waiver hearing conducted.* Thus, the court already had jurisdiction of S.W.E. and the further proceedings that were held protected his due process rights. There was no failure to acquire jurisdiction.

*Id.* (emphasis added).

And in *W.L.*, 707 N.E.2d at 813, we held that the juvenile court was divested of jurisdiction over W.L. once it had entered the dispositional decree. On January 8, 1998, after W.L. had been adjudicated a delinquent child, the juvenile court "ordered that W.L. be placed on suspended commitment, ordered family counseling, entered a parental participation order, and ordered that W.L. do extra chores in his home." *Id.* The prosecutor later discovered that he had inadvertently omitted the victim's claim for restitution, and on January 22, 1998, the State filed a Motion to Reopen for Restitution. *Id.* Relying on Indiana Code Section 31–30–2–1, we held that "the juvenile court discharged W.L. and his parents in the dispositional decree" and that, as a result, the juvenile court lacked jurisdiction to rule on the State's motion. *Id.* at 814.[4]

Taken together, *S.W.E.* and *W.L.* demonstrate that the jurisdiction of a juvenile court in a subsequent proceeding turns not on the existence of a prior delinquency adjudication, but on the contents of the dispositional decree in the prior proceeding and the date it was entered. We cannot agree with the import of the concurring opinion that the juvenile court retains jurisdiction over every child ever adjudicated a delinquent or because a particular child has been a "frequent customer" of the juvenile court. *See* op. at 302–303.

Here, B.R. has been adjudicated a delinquent on four previous occasions. But on three of those occasions, the court awarded guardianship of B.R. to the Department of Correction, an act that terminates a juvenile court's jurisdiction. *See* I.C. § 31–30–2–1(a)(2). Further, the court did not move to reinstate its jurisdiction over B.R. within thirty days of receiving notification from

---

3. That case addresses Indiana Code Section 31–6–2–3, the precursor of the current statute, Indiana Code Section 31–30–2–1, but the relevant text has not been changed, and, thus, the discussion in *S.W.E.* is equally applicable to the instant case.

4. Because the juvenile court did not award guardianship of W.L. to the Department of Correction, we noted that the court could not reinstate jurisdiction pursuant to Indiana Code Section 31–30–2–3. *See W.L.* 707 N.E.2d at 813.

the Department of Correction of B.R.'s scheduled date of release. *See* I.C. § 31–30–2–3; *J.J.M.*, 779 N.E.2d at 607; *W.L.*, 707 N.E.2d at 813. And punishment for the fourth adjudication, which involved a finding of truancy, consisted of formal home detention. The preliminary inquiry and investigation report reveals that the matter was closed on October 19, 2001, which indicates that B.R. and his parents had been discharged in accordance with Indiana Code Section 31–30–2–1(a)(1) and that the juvenile court had been divested of jurisdiction. *See W.L.*, 707 N.E.2d at 813. As *K.S.* emphasizes, "Indiana courts have held for many years that strict compliance with the statutory prerequisites for obtaining jurisdiction at the commencement of delinquency proceedings is required of juvenile courts." 807 N.E.2d at 770. In this case, the juvenile court's jurisdiction had been terminated in each of the previous four delinquency proceedings, and, for that reason, the juvenile court erred when it did not expressly approve the filing of the delinquency petition.

■ We cannot agree with the concurring opinion's position that the juvenile court retained jurisdiction over B.R. due to his previous delinquency adjudications and, therefore, could dispense with the statutory requirement that it expressly authorize the filing of the delinquency petition. The concurring opinion argues that it is more practical to "presume[ ] that it is in the best interests of the child or the community to initiate a formal delinquency proceeding with respect to subsequent delinquency allegations without the juvenile court having to enter a formal finding to that effect." Op. at 308. While this may be so, the legislature has unambiguously specified otherwise. *See* I.C. § 31–37–10–2 (stating that the "juvenile court *shall* ... [a]pprove the filing of a [delinquency] petition" if probable cause exists to believe

that the child is delinquent and that commencement of a delinquency proceeding is in the best interests of the child or the public) (emphasis added). And when the legislature acts, "the judiciary should refrain from substituting its beliefs for that of the legislature in determining the wisdom or efficacy of a particular statute." *Mahowald v. State*, 719 N.E.2d 421, 424 (Ind.Ct.App.1999); *see also Indiana Civil Rights Comm'n v. Indianapolis Newspapers, Inc.*, 716 N.E.2d 943, 946 (Ind.1999) ("Nothing may be read into a statute which is not within the manifest intention of the legislature as ascertained from the plain and obvious meaning of the words of the statute.") (quotations and citation omitted). Nevertheless, the juvenile court's failure to expressly approve the filing of the delinquency petition is not dispositive. Rather, we must determine whether B.R. has waived that issue on appeal by failing to make a timely objection to that jurisdictional defect.

### B. Waiver

In *K.S.* we held that a juvenile court's failure to follow the necessary steps, including approval of the filing of a petition, was a non-waivable error that precluded the court from assuming jurisdiction over the juvenile. *Id.* at 774–75. But subsequent panels of this court have addressed the same issue and reached a different conclusion. *See J.R. v. State*, 820 N.E.2d 173, 175–76 (Ind.Ct.App.2005); *M.B. v. State*, 815 N.E.2d 210, 213–14 (Ind.Ct.App. 2004). In *M.B.* we analyzed the "three elements of jurisdiction that must be present in order to confer upon a court the power to preside over a case: jurisdiction over the subject matter, jurisdiction over the parties, and jurisdiction over the particular case." 815 N.E.2d at 213. And there we observed that "the primary difference among those three is that challenges to subject matter jurisdiction are

not waivable, while the other two elements are." *Id.* (citations omitted).

As we explained in *M.B.*, the question of subject matter jurisdiction entails a determination of whether a court has jurisdiction over the general class of actions to which a particular case belongs. *See id.* at 214 (citing *Troxel v. Troxel,* 737 N.E.2d 745, 749 (Ind.2000)). Indiana Code Section 31–30–1–1 provides a juvenile court with exclusive original jurisdiction in proceedings in which a child is alleged to be a delinquent child, and "[t]here is no doubt that a juvenile court has subject matter jurisdiction to hear cases involving [allegedly] delinquent children." *J.R.,* 820 N.E.2d at 175. Further, the juvenile court acquires personal jurisdiction when the juvenile submits to the authority of the court by appearing at scheduled proceedings, and does so throughout the course of the proceedings without ever challenging its personal jurisdiction. *See M.B.,* 815 N.E.2d at 214 (citing *C.T.S. v. State,* 781 N.E.2d 1193, 1197–98 (Ind.Ct.App.2003), *trans. denied* ). And "[o]nce a court has acquired subject matter and personal jurisdiction, challenges to its subsequent rulings and judgment are questions incident to the *exercise* of jurisdiction rather than to the *existence* of jurisdiction." *Id.* (quoting *Buckalew v. Buckalew,* 754 N.E.2d 896, 898 (Ind.2001) (emphasis in original)). Challenges focusing on the exercise of jurisdiction, rather than its existence, implicate the final element of jurisdiction, i.e., jurisdiction over the particular case. *Id.* If a tribunal possesses the power to determine cases of the general class to which the particular case belongs, it possesses subject matter jurisdiction to consider the particular case, absent specific and timely objections to the jurisdiction of such particular case. *Id.* To be "timely" in this context would require, at the very least, registering an objection to the court's jurisdiction before the initiation of an appeal. *Id.*

█ Here, as we have already noted, the juvenile court had subject matter jurisdiction in the instant delinquency proceeding, and it also possessed personal jurisdiction because B.R. and B.R.'s father submitted themselves to the authority of the court by appearing at the scheduled proceedings. *See J.R.,* 820 N.E.2d at 175–76; *M.B.,* 815 N.E.2d at 214. Further, B.R. did not make a timely objection regarding the juvenile court's failure to approve the filing of the delinquency petition. Rather, he raises the issue of jurisdictional defect for the first time on appeal, and, thus, that issue has been waived. *See J.R.,* 820 N.E.2d at 176; *M.B.,* 815 N.E.2d at 214. We therefore conclude that the juvenile court's delinquency adjudication is unassailable on jurisdictional grounds.

**Issue Two: Sufficiency of the Evidence**

█ B.R. next contends that the evidence presented is insufficient to sustain the true finding that he committed disorderly conduct. When reviewing a juvenile delinquency adjudication, we will consider only the evidence and reasonable inferences supporting the judgment. *J.R.T. v. State,* 783 N.E.2d 300, 302 (Ind.Ct.App. 2003), *trans. denied.* We neither reweigh the evidence nor judge witness credibility. *Id.* If there is substantial evidence of probative value from which a reasonable trier of fact could conclude beyond a reasonable doubt that the juvenile committed the delinquent act, we will affirm the adjudication. *Id.* To support a finding that B.R. committed disorderly conduct as charged, the State was required to prove that he recklessly, knowingly, or intentionally engaged in fighting or tumultuous conduct. *See* Ind.Code § 35–45–1–3(1). Tumultuous conduct is that which "results in, or is

likely to result in, serious bodily injury to a person or substantial damage to property." Ind.Code § 35–45–1–1. The term "likely," as used to define tumultuous conduct, includes a temporal requirement of immediacy. *Davis v. State,* 672 N.E.2d 1365, 1367 (Ind.Ct.App.1996).

We have addressed the meaning of tumultuous conduct on several previous occasions. In *Whitley v. State,* 553 N.E.2d 511, 514 (Ind.Ct.App.1990), we held there was sufficient evidence of tumultuous conduct where the defendant was argumentative and struggled with police officers while they attempted to handcuff her. But in *Davis,* we reversed a disorderly conduct conviction where the defendant stood with his hand inside a car that had two firearms in it and ignored police officers' requests to leave the area. *Davis,* 672 N.E.2d at 1367–68. There was no evidence that the defendant was involved in the ongoing rioting in that area, and we held that his conduct did not amount to tumultuous conduct. *Id.* And in *Gebhard v. State,* 484 N.E.2d 45, 48 (Ind.Ct.App.1985), we held that the charging information failed to allege tumultuous conduct where it alleged only that the defendant held a gun as he walked into an empty hallway of an apartment building. Indeed, there was no allegation that the gun was loaded or that the defendant actually encountered or threatened anyone with the gun. *Id.* But we concluded: *"If* persons had appeared and *if* Gebhard had menaced them with a loaded pistol, a different result may have been reached." *Id.* at 48–49 (emphasis in original).

Here, B.R. approached a fellow student in an obvious state of anger and argued about an earlier incident in which one of the student's friends had allegedly assaulted B.R.'s father. Then, when B.R. and the student were standing face to face and as little as three feet from each other,

B.R. pointed an open or unsheathed knife at the other student. Although B.R. argues that he and the other student merely "exchanged innocuous words" and that he "didn't brandish the knife, or threaten with it," Brief of Appellant at 12, the evidence most favorable to the judgment and the reasonable inferences therefrom are that in the midst of a heated argument, B.R. pointed a knife at another person. B.R.'s conduct created an immediate danger of serious bodily injury, which was defused only when the threatened person struck B.R. and left. B.R.'s argument amounts to a request that we reweigh the evidence and assess witness credibility, which we cannot do. We conclude that the State presented sufficient evidence to support the delinquency adjudication.

## CONCLUSION

The determination of whether a juvenile court retains jurisdiction over a child previously adjudicated a delinquent must be made on a case-by-case basis in accordance with Indiana Code Section 31–30–2–1. In this case, none of B.R.'s previous delinquency adjudications supplied the juvenile court with continuing jurisdiction over him, and the juvenile court erred when it did not strictly comply with the statutory prerequisites for commencing a delinquency proceeding. However, B.R. waived that issue on appeal by failing to make a timely objection to the jurisdictional defect. Additionally, there is sufficient evidence to support the true finding that B.R. committed disorderly conduct.

Affirmed.

SULLIVAN, J., concurs.

BARNES, J., concurs in result in part and concurs in part with separate opinion.

BARNES, Judge, concurring in result in part and concurring in part.

I concur fully in rejecting B.R.'s challenge to the sufficiency of the evidence supporting his delinquency adjudication. I concur in result only on the jurisdictional issue. As the author of *K.S.*, I am aware that many of my colleagues, including the majority here, do not subscribe to my reasoning in these juvenile jurisdiction cases with respect to the non-waivability of certain errors. However, as a matter of both legality and practicality, I am convinced of the correctness of *K.S.*'s holding. I would note that the majority here, much like the *M.B.* panel, has failed to address the long line of cases noted in *K.S.* supporting the proposition that court approval for the filing of a first delinquency petition is one of several documents that absolutely must be included in the record, and that the failure of the record to disclose such a document is a fatal, non-waivable error. *See, e.g., Seay v. State*, 167 Ind.App. 22, 37, 337 N.E.2d 489, 498 (1975) (holding that the order of the juvenile court authorizing the filing of a delinquency petition is one of the "essential documents" needed when considering a challenge to juvenile jurisdiction and that we would sua sponte address jurisdictional issues, even if not raised by the appellant); *Kindred v. State*, 493 N.E.2d 467, 470–71 (Ind.Ct.App.1986) (holding that failure of record to disclose necessary prerequisites for initiating juvenile delinquency proceeding invalidated twenty-year-old criminal conviction for theft after juvenile was waived into adult court).[5] The majority here is guilty of what I see as a legalistic "bait-and-switch," and have cited general cases discussing the three types of jurisdiction in concluding

that a juvenile must object to the failure to approve the filing of a delinquency petition or the issue is waived. In my view, it is a matter for our supreme court to decide whether to ignore or overrule established precedent that specifically applies to juvenile delinquency proceedings.

However, I am just as convinced that once a child has been in the juvenile system and adjudicated a delinquent child, the importance in later cases of strict compliance by a juvenile court with the statutory prerequisites to commencing a formal delinquency proceeding diminishes. Here, B.R. was a frequent customer of the juvenile delinquency process; he had been adjudicated a delinquent child on four occasions prior to the current incident. There is no indication that the validity of any of these prior adjudications has ever been challenged.

As a matter of logic and practicality, when a child has already been through the system once before, it may be properly presumed that it is in the best interests of the child or the community to initiate a formal delinquency proceeding with respect to subsequent delinquency allegations without the juvenile court having to enter a formal finding to that effect. In *S.W.E. v. State*, 563 N.E.2d 1318, 1321 (Ind.Ct.App.1990), we held the juvenile court was not required to comply strictly with all of the statutory steps for juvenile jurisdiction where the child previously had been adjudicated delinquent, had not been discharged by the juvenile court, and the DOC had not been awarded guardianship of the child as a result of the first delinquency adjudication. In my view, the fact that the juvenile court here previously may

---

**5.** I am aware that *K.S.*'s reliance on *Kindred* has been challenged in part because it concerned a juvenile who had been waived into adult court, unlike K.S. That is a distinction without a difference, because what invalidat-

ed Kindred's conviction was the juvenile court's failure to obtain jurisdiction in the first place, not any defect in him being waived into adult court.

have awarded guardianship of B.R. to the DOC, only to have him get into trouble again after being released by the DOC, should not be dispositive nor should it require a different result from *S.W.E.*

I maintain that with respect to a child being considered for the first time for a formal delinquency proceeding, the juvenile court must approve the filing of a delinquency petition by expressly noting on the record that there is probable cause of delinquency and that it is in the best interests of the child or community to commence a formal proceeding. *See K.S.*, 807 N.E.2d at 770–71. I also believe this a non-waivable requirement. *See id.* at 774–75. With respect to subsequent delinquency allegations against a child who has already been adjudicated delinquent on at least one prior occasion, the rationale of *K.S.* is less compelling. *See id.* at 773 n. 5. I would hold that B.R.'s four previous trips through the juvenile justice system rendered strict compliance with all the steps for commencing a fifth delinquency proceeding unnecessary and affirm on that basis.