**Christopher BAILEY, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–0801–CR–65.

Court of Appeals of Indiana.

Sept. 19, 2008.

Anna E. Onaitis, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Nicole M. Schuster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

Christopher Bailey challenges the sufficiency of evidence supporting his convictions of Class B misdemeanor battery[1] and Class B misdemeanor disorderly conduct.[2] We reverse.

### FACTS AND PROCEDURAL HISTORY

In 2007, Bailey was a student at Perry Meridian High School. One morning in November, Bailey was waiting in line in the cafeteria to purchase breakfast. Assistant principal Sara Brewer approached Bailey and told him to pull up his pants. Bailey told her: "leave me alone, because, you know, I ain't in the mood." (Tr. at 22.) When Bailey started to walk toward another cafeteria line, Brewer put her arm up to stop Bailey and direct him out of the cafeteria and to the dean's office. Bailey, who "was upset," *(id.* at 12), bumped into Brewer's outstretched arm as he walked away.

Dean of Students Brian Knight was ten or fifteen feet from Brewer in the cafeteria. He heard Bailey yelling and looked over as Bailey walked through Brewer's outstretched arm. Knight went over to confront Bailey. Bailey "threw down his drink and his coat," *(id.* at 14), put his face about nine inches from Knight's face, balled up his fists, and insulted Knight

1. Ind.Code § 35–42–2–1.

2. Ind.Code § 35–45–1–3.

with a string of curse words. Perry Township Police Officer Douglas Hunter entered the cafeteria and escorted Bailey to the Dean's office.

The State charged Bailey with battery and disorderly conduct. After a bench trial, the court found Bailey guilty of both charges.

## DISCUSSION AND DECISION

Bailey claims the evidence was insufficient to support either of his convictions. We must affirm a conviction unless no reasonable fact-finder could have found the evidence proved the defendant's guilt beyond a reasonable doubt. *Winn v. State,* 748 N.E.2d 352, 357 (Ind.2001). When making our determination, we must view the evidence and the inferences there from in the light most favorable to the judgment, and we may neither reweigh the evidence nor reassess the credibility of the witnesses. *Id.*

### 1. *Battery*

■ The State alleged Bailey "did knowingly touch Sara Brewer ... in a rude, insolent or angry manner." (App. at 13.) "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind.Code § 35–41–2–2. We do not believe the State proved a knowing battery.

Bailey had his hands down and was pulling up his pants as he "just walked" away from Brewer. (Tr. at 25.) Brewer testified that when Bailey began to walk toward another cafeteria line, she put her arm up in front of him as an attempt to direct him out of the cafeteria. Bailey notes "the State presented no evidence that Bailey had an opportunity to stop walking or change the direction of his path in order to avoid making contact with Brewer's outstretched arm." (Appellant's Br. at 8.) Without knowing the amount of

space between Brewer and Bailey when Brewer put her arm up, we cannot infer Bailey walked with awareness "of a high probability" that he was going to bump into Brewer's outstretched arm. Accordingly, we reverse this conviction.

### 2. *Disorderly Conduct*

When charging Bailey with disorderly conduct, the State alleged he "did recklessly, knowingly, or intentionally ... engage in fighting or in tumultuous conduct." (App. at 14.) Conduct is tumultuous when it "results in, or is likely to result in, serious bodily injury to a person or substantial damage to property." Ind.Code § 35–45–1–1. At trial the State admitted "no harm did result and a fight did not result." (Tr. at 20.) Accordingly, the State urged the trial court to convict Bailey based on its argument "that harm was impending and could likely result from the actions of the defendant." *(Id.)*

Bailey balled his hands into fists, stood less than a foot from Knight's face, and was yelling curse words at Knight. Bailey asserts that evidence is insufficient, as a matter of law, to demonstrate conduct likely to result in serious bodily injury or property damage. We agree.

In *Whitley v. State,* 553 N.E.2d 511 (Ind. Ct.App.1990), police responded to a "neighborhood disturbance" between two groups of women. After police arrived, they separated the groups and asked the women to be quiet. Whitley continued to taunt and yell at the other group of women. On appeal she challenged whether yelling could be tumultuous conduct, and we held:

> The language of the statutory definition of "tumultuous conduct" contemplates physical activity rising to the level of serious bodily injury, substantial property damage, or that either is likely to occur. *Gebhard, [v. State,* 484 N.E.2d 45 (Ind.Ct.App.1985) ]; IC 35–45–1–1. This language is unambiguous.

The trial court could have reasonably concluded that Whitley's struggle with the police officers met this statutory definition, namely that there was a likelihood that either Whitley or the police officers could have sustained serious bodily injury during the attempt to handcuff Whitley. The record evidences a protracted physical struggle in which it took three officers to finally place handcuffs on Whitley. Carter testified that he was "unable to pin [Whitley] to the car" while trying to handcuff her. Cook stated that Whitley was "pulling and yanking and trying to get away." David Keller, the other officer at the scene, testified that Whitley was "struggling against him" while being handcuffed.

Thus, the trial court judge could have properly concluded that Whitley's conduct during the struggle supported both the resisting arrest and disorderly conduct convictions.

*Id.* at 513–14. In dissent, Judge Sullivan noted:

The majority finds an alternative basis for the disorderly conduct conviction in defendant's activity prior to her arrest. Although there may have been the seeds of injury or damage in the situation before the arrival of the police, the danger had been greatly if not altogether diminished at the time in question. At least three police officers were present at the crucial time here involved. They had quieted all the participants in the disturbance with the exception of Whitley. I do not believe that there was sufficient likelihood of serious bodily injury or substantial property damage to support the conviction.

*Id.* at 515 (Sullivan, J., dissenting).

Then, in the civil context, we addressed whether a teenager's yelling on a school bus was "tumultuous":

"Tumultuous conduct" is "conduct that results in, or is likely to result in, serious bodily injury to a person or substantial damage to property." After viewing the tape from the bus, the officers could not have concluded Jackson's conduct was tumultuous. The girls were yelling at each other, but they never approached each other. At one point N.J. even moved away from B.S.C. The girls argued with Willis after she told them she had called the police, but there was no indication serious bodily injury or substantial property damage was likely to occur.

When the police arrived, they ordered N.J. off the bus. She said her father had told her not to get off the bus, but she complied with the officers' order seconds later. She permitted herself to be handcuffed as soon as she stepped off the bus. There was no indication she could or would injure anyone or damage any property.

Although Officer Riggers stated in his affidavit he "observed [N.J.] engaging in disruptive and tumultuous behavior while in custody," the conduct described in his report was not "tumultuous." Officer Riggers reported N.J. said, "The bus driver is a liar," and repeatedly said, "Law Suit, Law Suit!" He stated the girls were rude and said their fathers would not let the officers do anything to them. He also stated the girls would not tell them what happened on the bus. Even if N.J. made rude comments, her conduct was not tumultuous.

*N.J. ex rel. Jackson v. Metropolitan School Dist. of Washington Twp.,* 879 N.E.2d 1192, 1196 (Ind.Ct.App.2008) (internal citations omitted).

 Bailey's conduct is more similar to N.J.'s conduct than to the "protracted

physical struggle" the majority found to support Whitley's conviction. *See Whitley,* 553 N.E.2d at 513–14. Bailey was close to Knight's face and yelling obscenities, but one could not reasonably expect Knight, as the Dean of Students, would respond to Bailey's tirade with physical aggression. *See id.* at 515 (Sullivan, J., dissenting) (where police had quieted all participants but Whitley, physical violence was unlikely to result from her yelling and taunts); *cf. B.R. v. State,* 823 N.E.2d 301, 307 (Ind.Ct. App.2005) (affirming delinquency based on disorderly conduct where, in the midst of a heated verbal argument between two students standing three feet apart, one pulled a knife on the other). Because Bailey's behavior was not "tumultuous," we reverse his conviction of disorderly conduct. *See, e.g., Davis v. State,* 672 N.E.2d 1365, 1367 (Ind.Ct.App.1996) (reversing conviction of disorderly conduct where defendant's conduct was unlikely to result in personal injury or property damage).

Reversed.

NAJAM, J., and ROBB, J., concur.