## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 10 2020, 11:02 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark D. Altenhof
Elkhart, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Megan M. Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

J.A.,

*Appellant-Respondent,*

v.

State of Indiana,

*Appellee-Plaintiff*

August 10, 2020

Court of Appeals Case No.
20A-JV-446

Appeal from the Elkhart Circuit Court

The Honorable Deborah A. Domine, Magistrate

Trial Court Cause No.
20C01-1907-JD-241

**Baker, Senior Judge.**

[1] J.A. appeals the juvenile court's delinquency adjudication and modification of disposition order committing him to the Indiana Department of Correction (DOC), arguing that (1) the evidence is insufficient to support the adjudication; (2) the juvenile court erred by not placing him in a more rehabilitative environment; and (3) the juvenile court erred by ordering J.A. to pay restitution. Finding the evidence sufficient and no error, we affirm.

## Facts

[2] On August 7, 2019, the State filed a petition alleging that then-sixteen-year-old J.A. was delinquent for committing acts that would be Level 6 felony resisting law enforcement and Level 6 felony auto theft had they been committed by an adult. According to the petition, on July 30, 2019, J.A. and two other boys were hanging out when they spotted a Nissan Altima. The vehicle was unlocked and the keys were inside. The three boys entered the vehicle and drove away; J.A. was not the driver. Law enforcement spotted the speeding vehicle and attempted to stop it. However, the driver did not stop and ultimately crashed the vehicle. Law enforcement witnessed J.A. and the two boys exit the vehicle and flee on foot. J.A. was eventually arrested.

[3] J.A. admitted to the auto theft charge, but contested the resisting law enforcement charge. Consequently, following an August 12, 2019, hearing, the juvenile court adjudicated J.A. delinquent for the auto theft charge, delayed adjudication on the resisting law enforcement charge, placed J.A. on supervised

probation in the Elkhart County Juvenile Detention Center, and ordered J.A. to pay restitution as a condition of his probation.

[4] J.A.'s probation officer found long-term placement for J.A. at the Youth Opportunity Center (YOC). Upon arrival, YOC completed a comprehensive evaluation of J.A. and established a treatment plan to assist J.A. with his myriad behavioral issues. On September 26, 2019, the juvenile court ordered the person whose Nissan Altima was stolen and J.A.'s parents to participate in the Victim Offender Reconciliation Program (VORP) to agree on a restitution amount. Thereafter, on October 23, 2019, the juvenile court ordered J.A.'s father to pay $750 and his mother to pay $250 while the matter was pending.

[5] The juvenile court eventually held a January 10, 2020, evidentiary hearing on the allegation that J.A. committed an act that would be Level 6 felony resisting law enforcement had it been committed by an adult. However, during the hearing, J.A. admitted to the lesser-included offense of what would be Class A misdemeanor resisting law enforcement had it been committed by an adult. Based on reports that J.A. was doing well at YOC, the juvenile court adjudicated J.A. delinquent on the misdemeanor offense, but continued J.A.'s placement there. Further, the juvenile court delayed action on the issue of restitution because it had not yet received documentation regarding the value of the victim's vehicle.

[6] On January 22, 2020, the Elkhart County Probation Department filed a report alleging that J.A. had violated the terms of his probation. The report alleged

that J.A. and some other YOC residents left their units, refused to return to them, and urinated in their pods. The report also alleged that J.A. kicked a staff member in the groin, punched another staff member in the face, choked a third staff member, continued punching and headbutting other staff while being restrained, and interfered with other peers also being restrained.

[7] Following a January 28, 2020, hearing at which J.A. admitted to committing some, but not all, of those acts, the juvenile court found that J.A. had violated the terms of his probation. YOC's residential program director informed the juvenile court that YOC "has exhausted all services" for J.A. and that due to his "history of violent, aggressive behaviors, including two attacks on his mother," J.A. could no longer be placed with them. Tr. Vol. II p. 118. At this time, the juvenile court also considered J.A.'s delinquency record and previous offenses. These included admissions in August 2019 to charges that would be Class B misdemeanor possession of marijuana and Class C misdemeanor possession of paraphernalia had they been committed by an adult.

[8] Additionally, the juvenile court reviewed the numerous times in which the juvenile court intervened to address his offenses. According to the juvenile court:

> Those interventions include: A psychological evaluation completed in 2017, which recommended state hospital placement, in which he was not accepted; probation supervision; drug screens; case management; individual and family therapy; medication management; time in [the Juvenile Detention Center]; diagnostic testing; VORP; placement at YOC; and informal courts. [J.A.] has also had an extensive history of inpatient hospitalizations.

*Id.* at 119. Based on this evidence, the juvenile court modified J.A.'s disposition order by committing him to the DOC.

[9] Also, regarding the outstanding issue of restitution, the juvenile court determined—based on the Nissan Altima's Kelly Blue Book value and the bill of sale—that the value of the vehicle was $3,515. And since Father and Mother had already paid $1,000 in restitution, the juvenile court ordered that J.A. pay $2,515 to the victim. However, the juvenile court held that J.A. did not have to make restitution payments until after the completion of his sentence. J.A. now appeals.

# Discussion and Decision

# I. Sufficiency of Evidence

[10] First, J.A. argues that the evidence was insufficient to support his delinquency adjudication for an action that would be Level 6 felony auto theft had it been committed by an adult. "When reviewing a juvenile delinquency adjudication, we will consider only the evidence and reasonable inferences supporting the judgment." *B.R. v. State*, 823 N.E.2d 301, 306 (Ind. Ct. App. 2005). "We neither reweigh the evidence nor judge witness credibility." *Id.* "If there is substantial evidence of probative value from which a reasonable trier of fact could conclude beyond a reasonable doubt that the juvenile committed the delinquent act, we will affirm the adjudication." *Id.*

Specifically, J.A. contends that "there was no evidence presented during the factual basis that J.A. was the one who stole the car, or at any point in time, exerted unauthorized control over it." Appellant's Br. p. 13. However, it is undisputed that "in juvenile cases, . . . a defendant may not appeal a delinquency adjudication following his admission to the facts of the offense." *J.H. v. State*, 809 N.E.2d 456, 458 (Ind. Ct. App. 2004). Rather, because post-conviction procedures are not available to juvenile delinquents, the proper "avenue[] of relief" would be a Trial Rule 60 motion. *Haluska v. State*, 663 N.E.2d 1193, 1194 (Ind. Ct. App. 1996).

And here, J.A. plainly admitted to committing an act that would be Level 6 felony theft had it been committed by an adult. We need not conduct an analysis to determine, in J.A.'s words, whether "[t]here was an insufficient factual basis to adjudicate J.A." Appellant's Br. p. 12. The very fact that J.A. admitted to the allegation effectively precludes him from then seeking relief through direct appeal on this count. Thus, because of J.A.'s admission, the evidence is sufficient.

## II. Placement Modification

Next, J.A. argues that the juvenile court erred when it placed him in the DOC. Specifically, J.A. contends that the juvenile court did not consider a more rehabilitative environment before modifying the disposition order.

We will reverse a juvenile court's placement of a delinquent minor only if the decision is clearly against the logic and effect of the facts and circumstances

before it. *C.C. v. State*, 831 N.E.2d 215, 216-17 (Ind. Ct. App. 2005). The choice of a disposition for a juvenile is within the sound discretion of the juvenile court, and it is accorded wide flexibility in making that judgment. *E.L. v. State*, 783 N.E.2d 360, 366 (Ind. Ct. App. 2003). That disposition is subject, however, to the statutory considerations of the welfare of the child, the community's safety, and the policy of favoring the least harsh disposition. *Id.*

[15] Indiana Code section 31-37-18-6(1) states that a juvenile court shall enter a dispositional decree that is "in the least restrictive (most family like) and most appropriate setting available; and . . . consistent with the best interest and special needs of the child[.]" However, even if less restrictive options are available, a juvenile court's placement of a juvenile in the DOC is not erroneous when "earlier attempts at rehabilitation through less restrictive means were unsuccessful." *D.E. v. State*, 962 N.E.2d 94, 97 (Ind. Ct. App. 2011).

[16] While the goal of child placement within the juvenile court system is rehabilitation and not punishment, *R.H. v. State*, 937 N.E.2d 386, 388 (Ind. Ct. App. 2010), the ultimate decision to place J.A. in the DOC was still appropriate, and the juvenile court did not err by doing so.

[17] When presented with multiple opportunities for rehabilitation, J.A. has shown few signs of progress. When he was placed in YOC, there were reports that J.A. exhibited problematic behavior by urinating in front of others; choking, headbutting, and punching various staff members; evading restraint; obstructing staff from restraining other patients; and deliberately disobeying orders.

Further, the juvenile court noted that J.A. admitted to committing acts that would be serious drug crimes had they been committed by an adult. And despite the various treatment and rehabilitative options supplied by the juvenile court system such as drug screens, case management, family and individual therapy, medication management, diagnostic testing, and inpatient hospitalizations, J.A. has proven that he will not take full advantage of the programs already offered to him.

[18] This Court has expressly held that "violation of a single condition of probation is sufficient to revoke probation." *M.J.H. v. State*, 783 N.E.2d 376, 377 (Ind. Ct. App. 2003). Moreover, this Court has also held that a delinquent juvenile's placement in the DOC may still be appropriate even if less restrictive or less harsh alternatives are available. *K.A. v. State*, 775 N.E.2d 382, 386-87 (Ind. Ct. App. 2002). Given J.A.'s questionable and, at times, dangerous behavior of disrespecting authority, disobeying express orders, committing physical battery, and possessing drugs and drug paraphernalia, placement in the DOC is an appropriate option. *See J.B. v. State*, 849 N.E.2d 714, 718-19 (Ind. Ct. App. 2006) (holding that juvenile's placement in the DOC was warranted after violating probation, committing new offenses, and failing to take advantage of prior opportunities for treatment).

[19] In truth, the juvenile court could have ordered placement in the DOC at an earlier time. Nevertheless, the juvenile court here showed leniency and exhausted all options. Consistent with J.A.'s best interests and the safety of the

surrounding community, we find that it was not erroneous for the juvenile court to modify J.A.'s disposition by placing him in the DOC.

# III. Restitution

[20] Finally, J.A. argues that the juvenile court erred by ordering him to pay restitution. More specifically, J.A. contends that while "the juvenile court inquired into Father and Mother's ability to contribute to restitution, the court failed to inquire into J.A.'s ability to pay." Appellant's Br. p. 19."An order of restitution is a matter within the trial court's discretion[.]" *M.L. v. State*, 838 N.E.2d 525, 528 (Ind. Ct. App. 2005). We will reverse a juvenile court's determination on restitution only if it is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.*

[21] Pursuant to Indiana Code section 35-38-2-2.3(a)(6), when restitution is ordered as a condition of probation or a suspended sentence, the trial or juvenile court must inquire into the defendant's ability to pay. *See also Ladd v. State*, 710 N.E.2d 188, 192 (Ind. Ct. App. 1999). And here, while the juvenile court did not conduct this type of inquiry, it still has an opportunity sometime in the future to determine whether J.A. can pay the restitution amount; the juvenile court expressly stated so at the end of the January 28, 2020, hearing. Specifically, the juvenile court said:

> I'm entering—I'm not. I'm ordering that [J.A.] pay restitution as a term of the modification that I am now ordering in the amount of 200 – 2,000 – I'm sorry – $2,515. That is based on the Kelley Blue

Book evaluations of the estimates of the price of the car and based on the bill of sale. When [J.A.] is released from the [DOC], I will look at resuming jurisdiction because I can't order it now.

Tr. Vol. II p. 136. In other words, the juvenile court will return to the matter of restitution and, at that time, evaluate J.A.'s ability to pay. Therefore, any discussion regarding restitution is premature. Accordingly , the juvenile court did not err.

[22] The judgment of the juvenile court is affirmed.

Bailey, J., and Vaidik, J., concur.