**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Aug 14 2014, 9:31 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**PATRICK A. DUFF**
Duff Law, LLC
Evansville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
**CHRISTINE REDELMAN**
Deputies Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF: | ) ) ) ) | |
| G.S.T. & C.T. (Minor Children), | ) ) | |
| and | ) ) | |
| G.T. (Father), | ) ) | |
| Appellant-Respondent, | ) ) | |
| vs. | ) ) | No.  82A04-1312-JT-603 |
| THE INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE VANDERBURGH SUPERIOR COURT
The Honorable Renee Allen Cain, Magistrate
The Honorable Brett J. Niemeier, Judge
Cause Nos. 82D01-1304-JT-29 and 82D01-1304-JT-30

August 14, 2014

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

G.T. (Father) challenges the decision of the juvenile court terminating his parental rights with regard to C.T. and G.S.T. (collectively the Children), arguing that the juvenile court lacked both personal and subject matter jurisdiction to decide the case. Additionally, Father contends that the Indiana Department of Child Services (DCS) failed to prove by clear and convincing evidence that 1) the conditions that led to the removal of the children would not be remedied; 2) Father posed a threat to the Children's well-being; 3) termination of Father's rights is in the Children's best interest; and 4) the plan for the care and treatment of the Children is acceptable and satisfactory. We find that Father's arguments are an impermissible request to reweigh the evidence, which this Court will not do. Accordingly, we affirm the juvenile court's decision to terminate Father's parental rights as to the Children.

FACTS

On September 21, 2010, the DCS filed its verified child in need of services (CHINS) petition for the Children, C.T., born on June 14, 1998, and G.S.T., born on March 31, 2000, after their mother (Mother)[1] was hospitalized for uncontrolled diabetes, and no one was available to care for the Children. The same day, the juvenile court held an initial hearing in which it authorized emergency removal of the Children. On September 28, 2010, the juvenile court adjudicated the Children as CHINS after Mother admitted the allegations in the CHINS petition and Father was unable to be located. On December 7, 2010, the juvenile court entered its dispositional decree continuing the Children's placement and ordering Mother to participate in reunification services. Once again, Father failed to appear. On January 29, 2011, Mother passed away, and the juvenile court subsequently changed the Children's placement plan to adoption at a review hearing.

On March 13, 2012, after notice by publication, Father appeared at a review hearing for the first time and informed the juvenile court that he was interested in having the Children placed with him at his home in Wisconsin. According to Father, the Children lived with him from birth until C.T. was 6 years old, and after that he saw the Children about every other year.

The DCS submitted an ICPC (Interstate Compact on the Placement of Children) to Wisconsin for placement of the Children with Father, but Wisconsin did not take action

---

[1] K.V., Mother of the Children, is deceased.

on it. However, the juvenile court and parties reasoned that if the CHINS case was closed, ICPC policy allowed the DCS to place the Children in Father's care since the Children were not originally removed from Father.

While awaiting a response from ICPC, the Children began an extended visit with Father in Wisconsin on June 5, 2012. The Children were officially placed with Father on July 24, 2012, and the CHINS case was then closed, effective July 27, 2012. As a result, the DCS withdrew its ICPC request.

Father was arrested on August 7, 2012, only 11 days after his official reunion with the Children. He was arrested for aggravated battery with the intent to commit bodily harm after he cut a man with a knife so deeply that the man's jaw area was exposed.

The Wisconsin Department of Health and Human Services (DHHS) did not believe that the ICPC procedure had been correctly followed and contacted DCS, informing it that Indiana needed to resume wardship of the Children due to Father's arrest. On August 22, 2012, the juvenile court reopened the CHINS case; however, the Children remained in Wisconsin with Father's fiancée after the home was determined to be safe.

Then, on October 10, 2012, Wisconsin DHHS again called the Indiana DCS to report pending charges for both Father and his fiancée and a petition to revoke Father's probation. The juvenile court then approved an emergency change of the Children's placement to foster care because Father was going to be incarcerated for much longer than the 2-3 weeks the DCS had originally anticipated, and the juvenile court had become

aware that Father's fiancée was involved in legal issues and was attempting to get public assistance for the Children.

On January 25, 2013, Father was sentenced to a three year prison sentence, and his earliest release date is December 2014. Even if he is released, Father will be on probation for another four years. The last time Father was placed on probation, he was unable to meet the conditions of his probation, and it was revoked.

On August 21 and September 12, 2013, the juvenile court held an evidentiary hearing on the DCS's termination petition. At this hearing, the DCS presented evidence of Father's extensive criminal history, which includes selling and possessing drugs and endangering safety by using dangerous weapons. Father has at least fourteen disorderly conduct charges and three battery convictions. The juvenile court was informed that in 2000, Father shot someone in front of the Children. Father testified that he has sold marijuana in the past and admits that alcohol was involved in all of his battery charges. Despite multiple battery convictions, Father did not believe he needed anger management classes.

Father testified that the Children have each written Father one letter since his incarceration, and they spoke highly of their current foster care placement. The Children informed Father that they did not want to live with his fiancée, and they asked Father not to fight the termination. If Father's rights were not terminated, Father's plan was to either leave the Children in their current placement until Father's release or to let them

5

live with their paternal grandmother, who was not approved for placement through an ICPC.

The juvenile court also heard the testimony of David Schoen, Father's landlord. Schoen explained that Father and his fiancée began renting a home from him in August 2012. After two months, they stopped paying rent. Father and his fiancée were evicted from the home in October 2012, and Schoen was still attempting to collect his judgment at the time of the termination hearing.

Court appointed special advocate (CASA) Carolyn Fischer testified that the termination of Father's parental rights and adoption of the Children by the current foster family was in the Children's best interests. She testified that they love their placement and have found stability, which children at their age need. According to Fischer, Child C.T. "feels like he's moved enough and he deserves to be where he is." Tr. p. 51. Fischer does not think waiting for Father's release would provide the Children with the stability they need at their age.

DCS family case manager (FCM) Mindy Prien also testified that the termination was in the Children's best interests. She explained that things are going well for them: "They're doing well in school . . . They've both obtained employment. They're building relationships and bonds with friends and family. They're very involved in outside activities. And they want stability and security." Tr. p. 60. She explained that the plan for the Children was adoption by the current foster family.

On November 19, 2013, the juvenile court issued its ruling terminating Father's parental rights. Father now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

We initially observe that the Fourteenth Amendment to the United States Constitution protects the traditional right of parents to raise their children. Troxel v. Granville, 530 U.S. 57, 65 (2000); Bester v. Lake Cnty. Office of Family & Children, 839 N.E.2d 143, 147 (Ind. 2005). However, parental rights are not absolute and must be subordinated to the child's interest in determining the proper disposition of a petition to terminate parental rights. In re D.D., 804 N.E.2d 258, 264-65 (Ind. Ct. App. 2004). Thus, "parental rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities." Id. at 265. The purpose of terminating parental rights is not to punish parents but to protect their children. In re S.P.H., 806 N.E.2d 874, 880 (Ind. Ct. App. 2004).

When reviewing the termination of parental rights, we neither reweigh the evidence nor judge the credibility of the witnesses. In re G.Y., 904 N.E.2d 1257, 1260 (Ind. 2009). Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment below. Id. Here, the juvenile court made specific findings of fact and conclusions of law in its order terminating Mother's parental rights.

Where the juvenile court enters specific findings and conclusions, we apply a two-tiered standard of review. Bester, 839 N.E.2d at 147. We first determine whether the

evidence supports the findings, and then whether the findings support the judgment. Id. We will not set aside the juvenile court's judgment unless it is clearly erroneous. In re A.A.C., 682 N.E.2d 542, 544 (Ind. Ct. App. 1997). A judgment is clearly erroneous when the evidence does not support the findings, or the findings do not support the result. In re S.F., 883 N.E.2d 830, 834 (Ind. Ct. App. 2008).

The elements that the DCS must allege and prove by clear and convincing evidence in order to effect the termination of parental rights are set forth in Indiana Code section 3l-35-2-4(b)(2), which provides:

(A) that one (1) of the following is true:

(i) The child has been removed from the parent for at least six (6) months under a dispositional decree.

(ii) A court has entered a finding under IC 31–34–21–5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

(iii) The child has been removed from the parent and has been under the supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

8

. . .

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

I.C. § 31-35-2-4(b)(2).  We note that Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, which requires that only one of the sub-elements, under subsection (B), be proven true by clear and convincing evidence.  In re L.S., 717 N.E.2d 204, 209 (Ind. Ct. App. 1999).

## II. Termination of Father's Parental Rights

### A. Jurisdictional Challenges Regarding DCS's Request to Reinstate Proceedings

Father contends that the juvenile court lacked both personal and subject matter jurisdiction to open the previously closed case.  Specifically, he argues that juvenile courts do not have personal or subject matter jurisdiction to hear closed cases in which all of the subjects are residing in another state.

We note that personal jurisdiction is an issue of law to which this Court applies a de novo standard of review.  LinkAmerica Corp. v. Cox, 857 N.E.2d 961, 965 (Ind. 2006).  This type of jurisdiction "turns on facts, typically the contacts of the defendant with the forum, and findings of fact by the trial court are reviewed for clear error."  Id.  If the contacts with the forum are sufficient, "due process requires that the assertion of personal jurisdiction over the defendant is reasonable … The assertion of personal jurisdiction will rarely be found unreasonable if 'minimum contacts' are found."  Id. at

9

967-68. Objections to personal jurisdiction may be waived as untimely. K.S. v. State, 849 N.E.2d 538, 542 (Ind. 2006).

Although Father claims he objected to the juvenile court's exercise of personal jurisdiction over him at the termination hearing, there is no indication of this objection on the record. Thus, we conclude that he waived his objection to personal jurisdiction as untimely. Waiver notwithstanding, the juvenile court still properly exercised personal jurisdiction. Father's contacts with Indiana were sufficient in that he submitted to the initial CHINS case on March 13, 2012, and Father received the Children from an Indiana court on July 27, 2012. DCS Ex. 5. Further, Father appeared by telephone at the termination hearing. Tr. 2-3. The reopening of the CHINS case is simply a continuation of the case to which Father submitted to the court's personal jurisdiction. Thus, the juvenile court properly exercised its personal jurisdiction over Father.

Subject matter jurisdiction is also an issue of law to which this Court applies a de novo standard of review. Lombardi v. Van Deusen, 938 N.E.2d 219, 223 (Ind. Ct. App. 2010). Subject matter jurisdiction entails a determination of whether a court has jurisdiction over the general class of actions to which a particular case belongs. M.B. v. State, 815 N.E.2d 210, 214 (Ind. Ct. App. 2004). Unlike personal jurisdiction, subject matter jurisdiction cannot be waived. Id. at 213-14. "The only relevant inquiry in determining whether a court has subject matter jurisdiction is whether the kind of claim advanced by the petitioner falls within the general scope of authority conferred upon such

10

a court by the constitution or by statute." Hite v. Vanderburgh Cnty. Office of Family & Children, 845 N.E.2d 175, 179 (Ind. Ct. App. 2006).

The juvenile court clearly has subject matter jurisdiction over cases such as this one. Indiana Code section 31-30-1-1(2) states that "[a] juvenile court has exclusive original jurisdiction" in "[p]roceedings in which a child… is alleged to be a child in need of services…" In this case, the Children were determined to be CHINS. DCS Ex. 5.

However, Father argues that when the juvenile court closed the Children's CHINS case, it lost subject matter jurisdiction because the parties were all living in Wisconsin at that point in time. With regard to the ICPC, Indiana Code section 31-28-4-1 article V(a) reads:

> The sending agency shall retain jurisdiction over the child sufficient to determine all matters relating to the custody, supervision, care, treatment, and disposition of the child, which the sending agency would have had if the child had remained in the sending agency's state, until the child is adopted, reaches majority, becomes self-supporting, or is discharged with the concurrence of the appropriate authority in the receiving state. The jurisdiction shall also include the power to effect or cause the child's return or transfer to another location and custody as provided by law. . .

Ind. Code §31-28-4-1 (emphasis added). ICPC procedure clearly required concurrence of the appropriate authority in Wisconsin before the Children could be properly discharged by the DCS. Therefore, the DCS should not have asked for the juvenile court to grant a permanent placement of the Children with Father in Wisconsin because it did not receive an ICPC report from the Wisconsin authorities. The ICPC procedure was not followed

11

correctly, which means that the DCS, the sending agency, retained jurisdiction over the Children.

In addition, Indiana Code section 33-23-2-4 states that Indiana courts "retain power and control over their judgments for ninety (90) days after rendering the judgments in the same manner and under the same conditions as they retained power and control during the term of court in which the judgments were rendered." Even though the juvenile court dismissed the Children's case, it reopened the CHINS case within 90 days. Therefore, when the CHINS case was reinstated, the juvenile court was simply exercising its ability to retain power and control over its judgments rather than opening a new case. As a result, we conclude that the juvenile court properly exercised subject matter jurisdiction over the case.

### B. Sufficiency of Evidence

### 1. Conditions Remedied

Father argues that the termination of parental rights order must be set aside because the DCS failed to prove that the conditions that led to the Children's removal will not be remedied and that the continuation of the parent-child relationship poses a threat to the Children.

As noted above, because Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, the juvenile court need only find either that the conditions resulting in removal will not be remedied or that the continuation of the parent-child relationship poses a threat to the Children. In re C.C., 788 N.E.2d 847, 854 (Ind. Ct. App. 2003)

(emphasis added). As a result, "where, as here, the [juvenile] court specifically finds that there is a reasonable probability that the conditions which resulted in the removal of the [children] would not be remedied, and there is sufficient evidence in the record supporting the [juvenile] court's conclusion, it is not necessary for [DCS] to prove or for the [juvenile] court to find that the continuation of the parent-child relationship poses a threat to the [children]." In re S.P.H., 806 N.E.2d at 882.

When determining whether the conditions that led to a child's removal will not be remedied, the juvenile court must judge a parent's fitness to care for his or her child at the time of the termination hearing. In re A.B., 924 N.E.2d 666, 670 (Ind. Ct. App. 2010). However, the juvenile court's inquiry must also evaluate a parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child. Id. The juvenile court may properly consider a parent's history of neglect, failure to provide support, lack of adequate housing, and lack of employment, among other things. McBride v. Monroe Cnty. OFC, 798 N.E.2d 185, 199 (Ind. Ct. App. 2003).

In this case, there is clear and convincing evidence that Father cannot adequately parent the Children. The Children had been removed from Mother and were in foster care for nearly 1.5 years before Father contacted the DCS for the first time. Tr. p. 55-56. When the juvenile court placed the Children in his care, Father was arrested for aggravated battery with intent to cause bodily harm just 11 days later. Tr. 63; DCS Ex. 6. Moreover, the record indicates that this is not the only time the Children have been in

13

Father's care when he committed a violent crime; The Children lived with Father in 2000 and witnessed Father shoot someone. Tr. p. 24-25.

At the time of the termination hearing, Father was still incarcerated for the aggravated battery. Tr. p. 13. He has an extensive criminal record, which includes selling and possessing drugs, endangering safety by using dangerous weapons, fourteen disorderly conduct charges, and three battery convictions. DCS Ex. 6-16. Father has sold marijuana in the past and admits that alcohol was involved in all of his battery charges. Tr. p. 18. Additionally, there is evidence that the Children will not be provided adequate housing and support from Father. Father and his fiancée were evicted from their home in October 2012, and the landlord was still attempting to collect his judgment at the time of the termination hearing. Tr. p. 78.

Father argues that the DCS and the juvenile court were aware of his criminal history when they placed the Children with him, so this history should not be used against him. He explains that "[i]t does not appear proper for the [juvenile] court to look at [Father's] prior conduct so heavily, instead of focusing solely on [Father's] conduct subsequent to the placement." We disagree. As we noted above, parental history is entirely appropriate when judging the fitness of a parent. See McBride, 798 N.E.2d at 199. The fact that the juvenile court gave Father a chance to change his pattern of behavior does not render impermissible the consideration of Father's history in determining his capacity to care for the Children. The DCS established that there is no reasonable probability that Father will be able to maintain stability and avoid criminal

14

conduct in order to care for the Children, especially when one considers the violent acts he has already committed while the Children were living with him. Thus, we decline to disturb the juvenile court's ruling on this basis.

## 2. Children's Best Interests

Father also argues that the DCS failed to prove that termination of the parent-child relationship is in the best interests of the Children. Father contends that all the DCS has shown is that the Mother became ill and was unable to care for the Children. Appellant's Br. p. 12.

In determining what is in the best interest of a child, the juvenile court is required to look beyond the factors identified by the DCS and to consider the totality of the evidence. McBride, 798 N.E.2d at 203. In so doing, the juvenile court must subordinate the interests of the parent to those of the child. Id. The court need not wait until a child is irreversibly harmed before terminating the parent-child relationship. Id. Moreover, we have previously held that the recommendations of the case manager and the CASA to terminate parental rights, in addition to evidence that the conditions resulting in removal will not be remedied, is sufficient to show by clear and convincing evidence that the termination is in the child's best interests. In re J.S., 906 N.E.2d 226, 236 (Ind. Ct. App. 2009).

Here, in addition to the findings set forth above, the termination of Father's parental rights is in the Children's best interests because the Children need stability and have expressed a desire to stay with their current foster family. Mindy Prien, the

15

Children's FSM, explained that the Children are doing well with their current placement: "They're doing well in school . . . They've both obtained employment. They're building relationships and bonds with friends and family. They're very involved in outside activities. And they want stability and security." Tr. p. 60. The Children are more likely to attain security and stability in their current environment than with a father who will likely be incarcerated or on probation and has an extensive criminal record.

In addition, the Children have asked Father not to fight the termination. Tr. p. 42. The Children want to be adopted by their current foster family, and the foster family has indicated a desire to adopt the Children as well. Tr. 60. CASA Fischer and FSM Prien both testified that termination is in the Children's best interests. Tr. p. 48-49, 51, 59. Based on these facts and circumstances, we conclude that the DCS proved by clear and convincing evidence that termination of Father's parental rights is in the Children's best interests. As a result, we decline to set aside the termination order on this basis.

### 3. Plan for Care and Treatment of Children

Finally, Father asserts that neither the evidence solicited at trial nor the juvenile court's findings of fact support the conclusion that the DCS's plan for care and treatment of the Children, termination of parental rights followed by adoption, is acceptable and satisfactory. We disagree. This Court has reasoned that "[a]ttempting to find suitable parents to adopt the children is clearly a satisfactory plan." Lang v. Stark County OFC, 861 N.E.2d 366, 375 (Ind. Ct. App. 2007). The DCS explained that the current plan for

16

the Children is adoption by the current foster family.  Tr. 60.  For this reason, we decline to set aside the termination order on this basis.

The judgment of the juvenile court is affirmed.

KIRSCH, J., and ROBB, J., concur.